BENJAMIN G. ALLEN et al., Respondents, *v.* CHARLES E. STEVENS et al., as Executors and Trustees under the Will of NATHAN F. GRAVES, Deceased, et al., Appellants, Impleaded with SIDNEY B. BREESE, as Administrator, etc., of CATHARINE H. GRAVES, Deceased, et al., Respondents.

1. GIFTS FOR CHARITABLE PURPOSES — ACT OF 1893. The act "to regulate gifts for charitable purposes" (L. 1893, ch. 701) restored the ancient law touching charitable uses for indefinite beneficiaries, and the practice governing the administration of such trusts.

2. RESTORATION OF POWER OF CHANCERY. It was the intention of the act of 1893 to restore to the Supreme Court, as the court of equity, the power formerly exercised by chancery in the regulation of gifts for charitable purposes, and thus protect gifts to indefinite beneficiaries in perpetuity.

3. CORPORATION NOT NECESSARY FOR EXECUTION OF TRUST. A corporation is not necessary for the execution of a permanent trust for charitable uses, since the adoption of the act of 1893; but the Supreme Court, in a proper case, must take upon itself such execution, over which it shall have control where a trustee is not named for the purpose.

4. TESTAMENTARY GIFT FOR CHARITABLE PURPOSE RESCUED FROM INDEFINITENESS BY EXERCISE OF DOCTRINE OF CY-PRES. Where a gift in trust, undertaken to be made by the will of a testator who died after the adoption of the act of 1893, with the intention of founding a permanent charity, would have been invalid, prior to that act, only because of the indefiniteness of the beneficiaries and because of the absence of a direction for the formation of a corporation within two lives in being to take over the trust property, it is validated by that act and effectuated through the practice revived thereby, requiring the Supreme Court, when properly moved by the attorney-general, representing the beneficiaries, to ascertain, as nearly as may be, the intention of the testator as to the method of selecting the beneficiaries, and to make such intention efficacious by decree.

5. TESTAMENTARY PROVISION FOR ORIGINAL CHARITY WITHIN PROTECTION OF STATUTE. The following testamentary provision is within the protection of the act of 1893 : '' I give, bequeath and devise all the rest and residue of my property of every kind, personal and real, wherever situate, to my trustees hereinafter named, for the purpose of founding, erecting and maintaining Graves Home for the Aged, to be located in the city of Syracuse, in the state of New York. It is intended for a home for those, who by misfortune have become incapable of providing for themselves, and those who have slender means of support. The institution to be known as The Graves Home for the Aged.''

6. MANAGEMENT OF TRUST. Where the trustees of a trust for an original charity, undertaken to be created by will, with no direction for the formation of a corporation, are named by the testator and expressly prohibited from holding any portion of the testator's property longer than the lives of two persons in being named in the will, it is to be deemed that the trustees are charged with the management and conduct of the trust until the expiration of the period measured by the two lives, at which time the title to the trust property will vest in the Supreme Court under the statute.

7. STATUTORY LIMITATION OF AMOUNT OF TESTAMENTARY GIFTS TO CHARITABLE CORPORATIONS NOT APPLICABLE TO GIFT TO TRUSTEES. The statute (L. 1860, ch. 360), which prohibits a person having certain relatives from devising or bequeathing more than one-half of his estate

" to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise," does not apply to a devise or bequest to individuals in trust for a charitable purpose.

8. COSTS IN EQUITY. The question of the amount of costs, in an action in equity for the construction of a will, in which the Supreme Court has power to award costs to each of the parties, being in the discretion of that court is not subject to review by the Court of Appeals so long as the allowances do not exceed the limitations provided by statute.

*Allen* v. *Stevens*, 33 App. Div. 485, reversed.

(Argued October 26, 1899; decided December 5, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 10, 1898, and from the judgment entered thereon, reversing a judgment of Special Term and granting a new trial.

This action was brought for the purpose of obtaining a construction of the will of Nathan F. Graves, deceased, and particularly the tenth clause thereof devising and bequeathing the residuary real and personal estate in trust for the purpose of founding, erecting and maintaining Graves Home for the Aged, to the effect that the said provisions of the tenth clause be adjudged void and invalid, and also that it be adjudged and determined that the said will is void and invalid so far as it devised and bequeathed more than one-half of the real and personal property of the testator to benevolent, charitable, literary, scientific, religious and missionary societies, associations or corporations in trust or otherwise, and that the surplus of such one-half part be distributed and conveyed to the plaintiffs, who are next of kin of the testator.

The Special Term decided that the will was in all respects valid and rendered judgment accordingly. The Appellate Division, by a divided court, held that the tenth clause was invalid and reversed the judgment. From the order and judgment entered thereon appeals have been taken to this court.

The will reads as follows : " I Nathan F. Graves of the city of Syracuse in the State of New York being of sound mind and memory, do make, ordain, publish and declare this to be my last will and testament, that is to say :

"*First.* After all my lawful debts are paid and discharged, I give, devise and bequeath unto Catharine H. Graves my wife all of the furniture beds and bedding of every kind including paintings, pictures vases and statuary of every kind with all kitchen utensils in the dwelling house where we now live the horses harnesses carriages wagons sleighs sleds cows chickens and everything appertaining thereto and connected therewith including feed of every kind to have and to hold the same to her heirs and assigns forever. I also give and bequeath to the said Catharine H. Graves the rents issues and profits of all of my houses, tenements and stores south of James street in Syracuse to be paid to her monthly subject only to the necessary repairs and taxes for and during her natural life. I also give and bequeath to the said Catharine H. Graves all dividends that may be declared by the New York State Banking Company on all the stock standing in my name to be paid to her when declared and due payable to her immediately for and during her natural life.

"*Second.* I give and bequeath to the Oneida Cemetery Association called Glenwood Cemetery situate in the town of Lenox near the village of Oneida, in Madison county in the State of New York the sum of five hundred dollars to be received and held in trust by the trustees thereof, or other representatives of said Cemetery Association to be invested on first bond and mortgage or mortgages the interest or so much thereof or so much of the same as may be necessary be expended in keeping the family burial lot in good order grading mowing enriching and all other things that may be needed. The lot is known as lot number one in section S in said cemetery the title of which is in Nathan F. Graves and Catharine H. Graves his wife. The said money may be deposited in any Savings Bank in Madison or Onondaga county when not invested in bond and mortgage any part of the interest or principal may be used to repair any injury to the monument or head stones caused by any casualty or by lapse of time. :

"*Third.* I give and bequeath to the General Synod of the

Reformed Church in America also known as the General Synod of Church in America the sum of ten thousand dollars for the Specific purpose of founding and maintaining an annual course of Lectures on Missions. The Choice of the lecturer and the details of the Lectureship to be under the direction of the Professors in the Seminary at New Brunswick, New Jersey and the Corresponding Secretary of the Board of Foreign Missions, of the Reformed Church of America or his Successor payable after the death of my wife Catharine H. Graves, but the sum of Five hundred dollars a year is to be paid by my executors at such times as the same may be needed to sustain the lecture course during the life of my wife.

" *Fourth.* I give and bequeath to the Syracuse University situated in the city of Syracuse in the State of New York ten thousand dollars for the specific purpose of founding and maintaining an annual course of Lectures on Missions. The choice of the lecturer and the details of the Lectureship to be under the direction of the Chancellor of the University payable after the death of my wife Catharine H. Graves but the sum of five hundred dollars a year is to be paid by my executors at such times as the same may be needed to sustain the lecture course during the life of my wife.

" *Fifth.* I give and bequeath to Hope College situated at Holland in the state of Michigan ten thousand dollars for the specific purpose of erecting a fire proof building to be used as a library. The sums that I have advanced or may hereafter advance during my life will be deducted from the above amount. I also give and bequeath to said Hope College my miscellaneous library in the dwelling house in Syracuse where I now reside, the library will not be delivered to said Hope College during the life of Catharine H. Graves, my wife, unless she consents to the removal in writing.

" *Sixth.* I give and bequeath to the Syracuse Home Association situate at the corner of Townsend and Hawley streets in Syracuse to the Onondaga County Orphan Asylum in Syracuse and the St. Joseph's Hospital situate on Prospect

Avenue corner Union Street in Syracuse each one thousand dollars payable after the death of Catharine H. Graves my wife.

"*Seventh.* I give and bequeath unto the consistory of the Reformed Church situated on James Street in Syracuse in the State of New York the sum of two thousand dollars in trust for the specific purpose hereinafter named which sum may be invested in first mortgage or mortgages the interest to be used in the payment of the rent of a pew in said church and the balance of interest if any to be given to the Board of Foreign Missions of said church. The pew designated by the Consistory may be used by the Pastor of the church and his family when needed for that purpose and when not so needed to be used as the Consistory shall from time to time determine.

"*Eighth.* I give and bequeath to my executors the sum of fifteen hundred dollars but in trust to be used for the purpose of placing in the Reformed Church in Syracuse a memorial window for wife Catharine H. Graves and myself. The sum may be used for that purpose or so much thereof as may be necessary. The memorial window may be omitted and a memorial tablet be placed on the wall inside of the church in either case the consent and approval of the consistory must first be obtained.

"*Ninth.* I give and bequeath to Francis H. Loomis the son of my sister Achsah H. Loomis one thousand dollars.

"I give and bequeath to Helen A. Graves, the daughter of my brother, Benjamin S. Graves, one thousand dollars. I give and bequeath to Benjamin G. Allen, the son of my sister, Mary A. Allen, one thousand dollars. I give and bequeath to Helen M. Hicks, Charles Sterling Graves, William Shaw Graves, Nathan Francis Graves and Mary Elizabeth Graves, the children of my brother, Sterling P. Graves, each one thousand dollars. I give and bequeath to Abial S. Graves, my brother, one thousand dollars; to Mary E. Strong, Elizabeth and Benjamin S. Graves, his children, one thousand dollars each. I give and bequeath to Helen Breese Graves, daughter of Maurice A. Graves, one thousand

dollars. I give and bequeath to Nathan B. Graves ten thousand dollars. I give and bequeath to Augustus C. Stevens, son of Charles E. Stevens, my law library and my mahogany book and paper case. I give and bequeath to Maurice A. Graves my three black walnut book cases, now in my library room where I now reside; also my library table. I give and bequeath to my brother the portrait of myself, painted by Elliatt unto Sterling P. Graves I give and bequeath unto Nathan Francis Graves my watch and chains.

"*Tenth.* I give, bequeath and devise all the rest and residue of my property of every kind, personal and real, wherever situate, to my trustees hereinafter named for the purpose of founding, erecting and maintaining Graves Home for the Aged, to be located in the city of Syracuse, in the State of New York. It is intended as a home for those who by misfortune have become incapable of providing for themselves and those who have slender means of support. The institution to be known as the Graves Home for the Aged. I hereby appoint Charles E. Stevens, Rasselas A. Bonta and Maurice A. Graves for the trustees to execute the above trust. I hereby authorize and empower my executors, or the survivor of them, to rent or sell any part or all of my real estate that I may own at the time of my death. They are authorized to employ a person or persons to have charge of the real estate, to collect rents, make & to repairs, and to pay such sums for compensation as they may deem reasonable and proper.

"After my executors have executed their trust and paid all the legatees provided for in this will they are authorized and directed to convey to the said trustees above named the balance and remainder of my property of every kind to be applied for the purposes above provided, and the said trustees, or the survivor, are authorized to rent or sell all or any part of my real or personal property and to employ such agents as they may deem proper to take charge of the same and pay them such compensation as they deem best.

"*Eleventh.* My executors or my trustees are authorized to retain my stock and shares in the New York State Banking Company and continue the business of banking for a term of years, at their discretion, but may sell the same or any part thereof at any time, but the same is not to be continued nor any portion of my property held longer than the lives of Catharine Graves Roby, daughter of Sidney B. Roby of Rochester, and Helen Breese Graves, daughter of Maurice A. Graves of Syracuse.

" Likewise, I make, constitute and appoint Charles E. Stevens, Rasselas A. Bonta and Maurice A. Graves to be executors of this my last will and testament, hereby revoking all former wills by me made.

" In Witness Whereof, I have hereunto subscribed my name and affixed my seal the fifteenth day of September in the year of our Lord one thousand eight hundred and ninety-three.

NATHAN E. GRAVES [SEAL]." ·

*Augustus C. Stevens* and *George R. Cook* for executors, appellants. The legislature of this state, having taken away from the courts the power of upholding indefinite charitable trusts, may re-invest them with such power to the full extent to which the same is enjoyed by the Chancery Courts of England. (*Levy* v. *Levy*, 33 N. Y. 97; *Bascom* v. *Albertson*, 34 N. Y. 584; *Ayres* v. *Methodist Church*, 3 Sandf. 351; *Holmes* v. *Mead*, 52 N. Y. 338; *Holland* v. *Alcock*, 108 N. Y. 312.) The system of law which has grown up in this state, and by which a vast number of commendable charitable bequests have been defeated, has long been felt to be an evil, and it was for the purpose of eradicating this evil that chapter 701, Laws of 1893, and chapter 547, Laws of 1896, were passed, the legislature recognizing that the injury resulting to the community from defeating the intentions of charitably disposed testators is greater than could possibly result from a more liberal policy towards charity. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Levy* v. *Levy*, 33 N. Y. 110; *Holmes* v. *Mead*, 52 N. Y. 339; *Bascom* v. *Albertson*, 34 N. Y. 584; *Adams*

17

v. *Perry*, 43 N. Y. 487; *Prichard* v. *Thompson*, 95
N. Y. 76; *Cottman* v. *Grace*, 112 N. Y. 299; *Read*
v. *Williams*, 125 N. Y. 560; *Tilden* v. *Green*, 130 N.
Y. 29; *Booth* v. *Baptist Church*, 126 N. Y. 215.) Nearly
every reported case which violates the rule requiring a
definite and ascertainable beneficiary to be named or desig-
nated, also violates the rule against perpetuities; and if the
statute is to have any substantial effect whatever, it must
except such trusts from the operation of the rule against per-
petuities. (L. 1893, ch. 701; *Dammert* v. *Osborn*, 140 N.
Y. 30; *Adams* v. *Perry;* 43 N. Y. 487; *Wetmore* v. *Parker*,
52 N. Y. 450; *LeCouteulx* v. *City of Buffalo*, 33 N. Y. 333;
*Bird* v. *Merklee*, 144 N. Y. 544; *Power* v. *Cassidy*, 79 N.
Y. 602; *Burrill* v. *Boardman*, 43 N. Y. 254; *Yates* v. *Yates*,
9 Barb. 337; *Leonard* v. *Burr*, 18 N. Y. 96; *Phelps* v.
*Pond*, 23 N. Y. 69.) The statute in question would clearly
have the effect of allowing a willing trustee to execute a trust,
even though there is no one in existence who can demand its
execution. (*Adams* v. *Perry*, 43 N. Y. 487; *Wetmore* v.
*Parker*, 52 N. Y. 450; *LeCouteulx* v. *City of Buffalo*, 33
N. Y. 333; *Bird* v. *Merklee*, 144 N. Y. 544; *Gilman* v.
*McArdle*, 99 N. Y. 451; *Holland* v. *Alcock*, 108 N. Y. 323;
*Hooper* v. *Hooper*, 32 Ala. 669; *Sibley* v. *Marian*, 2 Fla.
553; *Cleland* v. *Waters*, 19 Ga. 35; *Ross* v. *Vertner*, 6 Miss.
305.) There was an equitable conversion of the real property
of Nathan F. Graves, deceased, into personal property, by the
provisions of the will. (*Phelps* v. *Pond*, 23 N. Y. 69;
*Lent* v. *Howard*, 89 N. Y. 169; *Fraser* v. *Trustees*, 124
N. Y. 479; *Asche* v. *Asche*, 113 N. Y. 232; *Delafield*
v. *Barlow*, 107 N. Y. 535; *Power* v. *Cassidy*, 79 N. Y.
602.) The will of the testator in effect directs his trustees
to procure the incorporation of an institution to be known
as "the Graves Home for the Aged," and to convey
all the residue of his property to such corporation. (*Til-
den* v. *Green*, 130 N. Y. 29; *Burrill* v. *Boardman*, 43
N. Y. 254.) Chapter 360 of the Laws of 1860 is not applicable
to this case. (*Matter of Crane*, 12 App. Div. 276; *Amherst*

*College* v. *Ritch,* 151 N. Y. 282; *Harris* v. *Slaght,* 46 Barb. 470.) The trial court had no jurisdiction to make the attorney-general a party defendant, and to give special counsel appearing for him a large allowance, payable out of the estate. (*Matter of Atty.-Gen.* v. *C. L. Ins. Co.,* 88 N. Y. 571; *Matter of Atty.-Gen.* v. *N. A. L. Ins. Co.,* 91 N. Y. 66.) The trial court had no authority to make extra allowances to attorneys on the same side other than to attorneys for executors and trustees, exceeding in the aggregate $2,000. (*Wetmore* v. *Parker,* 52 N. Y. 450; *Matter of Atty.-Gen.* v. *N. A. L. Ins. Co.,* 91 N. Y. 57; *Matter of Holden,* 126 N. Y. 589; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.,* 129 N. Y. 27.) The Appellate Division had no jurisdiction to reverse the portions of the judgment of the trial court not appealed from. (*Kelsey* v. *Western,* 2 N. Y. 500; *Robertson* v. *Bullions,* 11 N. Y. 246; *Murphy* v. *Spaulding,* 46 N. Y. 559; *Genet* v. *Davenport,* 60 N. Y. 196.)

*Charles C. Cook* for Syracuse Home Association et al., appellants. The bequest and devise under the 10th paragraph of the will of Nathan F. Graves, deceased, is valid for the reason that it is a bequest and devise, not to a corporation, but to individuals in trust for a charitable purpose. (L. 1893, ch. 701; *Dammert* v. *Osborn,* 140 N. Y. 30.) Chapter 360 of the Laws of 1860 does not apply. (*Matter of Crane,* 12 App. Div. 271; *Amherst College* v. *Ritch,* 151 N. Y. 282.) Where legacies of specific amounts are bequeathed, they are to be paid in full before anything passes to the residuary legatee and devisee. (Dayton on Surr. [3d ed.] 474; 2 Williams on Exrs. [1st ed.] 895; *Tomlinson* v. *Bury,* 145 Mass. 346.) By the terms of the will there was a conversion of the real property into personal property. (*Fraser* v. *Trustees, etc.,* 124 N. Y. 479; *Asche* v. *Asche,* 113 N. Y. 232; *Lent* v. *Howard,* 89 N. Y. 169.)

*Frank Hiscock* for attorney-general, appellant. By the terms of the will the real estate of the testator was converted into personal property for distribution, and for carrying out

the provisions of the will. (*Asche* v. *Asche*, 113 N. Y. 232; *Delafield* v. *Barlow*, 107 N. Y. 535; *Dodge* v. *Pond*, 23 N. Y. 69; *Power* v. *Cassidy*, 79 N. Y. 602; *Lent* v. *Howard*, 89 N. Y. 169; *Fraser* v. *Trustees*, 124 N. Y. 479.) The will is not in violation of the statute of perpetuities. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 337; *People* v. *Simonson*, 126 N. Y. 299; *Burrill* v. *Boardman*, 43 N. Y. 254; *Shipman* v. *Rollins*, 98 N. Y. 311; *Beekman* v. *Bonsor*, 23 N. Y. 298; *Levy* v. *Levy*, 33 N. Y. 97; *Power* v. *Cassidy*, 79 N. Y. 602; *Owens* v. *Missionary Society*, 14 N. Y. 380.) Bequests of the character of the 10th provision in Mr. Graves' will, are not invalid by reason of indefiniteness or uncertainty of the persons designated as beneficiaries therein. (L. 1893, ch. 701; *Dammert* v. *Osborn*, 140 N. Y. 30; *Tilden* v. *Green*, 130 N. Y. 29.) The plaintiffs' claim, that the 10th provision of Mr. Graves' will is void as to one-half of the remainder of his estate under section 1, chapter 360, Laws of 1860, is untenable. (*Amherst College* v. *Ritch*, 151 N. Y. 335; 91 Hun, 534; *Williams* v. *Tilt*, 36 N. Y. 319; *Smith* v. *Marvin*, 27 N. Y. 137; *Harris* v. *A. B. Society*, 4 Abb. Pr. [N. S.] 421; *Porter* v. *Caroline*, 2 N. Y. Supp. 791; *Hollis* v. *D. T. Seminary*, 95 N. Y. 166; *Harris* v. *A. B. H. M. Society*, 33 Hun, 411; *Lefevre* v. *Lefevre*, 59 N. Y. 435; *Vanderveer* v. *McKane*, 25 Abb. [N. C.] 106; *Harris* v. *Slaght*, 46 Barb. 504.) The costs and extra allowances were properly awarded to the attorney-general. (Code Civ. Pro. §§ 3228, 3230; *Noyes* v. *C. A. Society*, 70 N. Y. 483; *Savage* v. *Allen*, 2 T. & C. 474; *Couch* v. *Millard*, 41 Hun, 212; *Matter of Engelbrecht*, 15 App. Div. 541; *M. R. Co.* v. *L. S. Co.*, 86 Hun, 473; *Booth* v. *Baptist Church*, 126 N. Y. 248; *West* v. *Place*, 47 Misc. Rep. 21; *Weed* v. *Paine*, 31 Hun, 10; *Downing* v. *Marshall*, 37 N. Y. 380; *Wetmore* v. *Parker*, 52 N. Y. 466.)

*Charles E. Stevens* for First Reformed Church, appellant. The bequest contained in the 7th clause of the will to the

Consistory of the Reformed Church, situated on James street in Syracuse, was intended as and was a bequest to this defendant, " The First Reformed Dutch Church of Syracuse." (*Lefevre* v. *Lefevre*, 59 N. Y. 434; *Holmes* v. *Mead*, 52 N. Y. 338; *Power* v. *Cassidy*, 79 N. Y. 610; *Shipman* v. *Rollins*, 98 N. Y. 311.) The Appellate Division of the Supreme Court had no jurisdiction to reverse that part of the judgment of the trial court which held that the bequests contained in the 7th and 8th paragraphs of the will were valid. (*Kelsey* v. *Western*, 2 N. Y. 500; *Robertson* v. *Bullions*, 11 N. Y. 246; *Colburn* v. *Morton*, 3 Keyes, 303; *Murphy* v. *Spaulding*, 46 N. Y. 559; *Gent* v. *Davenport*, 60 N. Y. 196; Code Civ. Pro. § 1022; *Stiefel* v. *N. Y. N. Co.*, 12 App. Div. 266; *Otten* v. *M. Ry. Co.*, 150 N. Y. 395.) The provisions of clauses 7 and 8 of the will in question do not violate chapter 360 of the Laws of 1860. (*Matter of Crane*, 12 App. Div. 276; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Harris* v. *Slaght*, 46 Barb. 470; *Matter of Frazer*, 92 N. Y. 239; *Emans* v. *Hickman*, 12 Hun, 425; *Detmiller* v. *Hartman*, 37 N. J. Eq. 347; *Hagenmeyer* v. *Hausebman*, 2 Dem. 87; *Bainbridge's Appeal*, 97 Penn. St. 482; *Gilmer* v. *Gilmer*, 42 Ala. 9; *Wood* v. *Vandenburgh*, 6 Paige, 277.) If the will in question, as a whole, does violate chapter 360 of the Laws of 1860, the reduction directed by that statute should be made from the residuary bequest and the legacies of specified amounts should be paid in full. (2 Williams on Exrs. [9th ed.] 801; Dayton on Surr. [3d ed.] 474; *Scott* v. *Stebbins*, 91 N. Y. 605; *McCorn* v. *McCorn*, 100 N. Y. 511; *Hogan* v. *Kavanaugh*, 138 N. Y. 417; *Hoyt* v. *Hoyt*, 85 N. Y. 142; *Taylor* v. *Dodd*, 58 N. Y. 335.)

*Joseph W. Sutphen* for General Synod, appellant. The synod can take the gift. (L. 1819, ch. 110; L. 1869, ch. 197; L. 1869, ch. 171; L. 1889, ch. 191; L. 1890, ch. 553.) The gift to it under clause third of the will does not offend chapter 360, Laws of 1860, and is not in violation thereof. (113 N. Y. 232; *Matter of Crane*, 12 App. Div. 271; *Hollis* v. *D.*

*T. Seminary,* 95 N. Y. 166; *Harris* v. *Slaght,* 46 Barb. 504; *Potter* v. *Chapin,* 6 Paige, 639; *De Witt* v. *Chandler,* 11 Abb. Pr. 459; *Owens* v. *Missionary Society,* 14 N. Y. 380.) A gift to a foreign beneficiary is not within the Laws of 1860, unless a similar provision exist in the foreign state, and it may take. The law relates to domestic corporations only. (*Hope* v. *Brewer,* 136 N. Y. 126; *Matter of Huss,* 126 N. Y. 537; *Kerr* v. *Dougherty,* 79 N. Y. 327; *Cross* v. *U. S. Trust Co.,* 131 N. Y. 330; Redfield's Law & Pr. Surr. Cts. [5th ed.] 232.) The contesting parties cannot question the legacy under clause third by invoking chapter 360, Laws of 1860. (*Amherst College* v. *Ritch,* 151 N. Y. 333.) The third clause of the will is a charge on the realty. (*Rafferty* v. *Clark,* 1 Brad. 437; *Tracy* v. *Tracy,* 15 Barb. 503.) The allowance to appellant's attorneys should stand. It cannot be said to be excessive. (67 N. Y. S. R. 386.)

*William G. Tracy* for Benjamin G. Allen et al., respondents. Previous to the act of 1893 a devise or bequest of property to trustees for charitable purposes was void under the laws of this state when the beneficiaries were indefinite and uncertain. (Fowler on Charitable Uses, 29–42; 2 Pom. Eq. Juris. § 1027; *Williams* v. *Williams,* 8 N. Y. 525; *Levy* v. *Levy,* 33 N. Y. 97; *Bascom* v. *Albertson,* 34 N. Y. 584; *Holmes* v. *Mead,* 52 N. Y. 332; *Tilden* v. *Green,* 130 N. Y. 29; *People* v. *Powers,* 147 N. Y. 104; *Fosdick* v. *Town of Hempstead,* 125 N. Y. 581; *White* v. *Howard,* 46 N. Y. 144; *Sherwood* v. *A. B. Society,* 4 Abb. Ct. App. Dec. 227; *Owens* v. *Missionary Society,* 14 N. Y. 380.) A devise or bequest of real or personal property to trustees in perpetuity for charitable purposes, where the beneficiaries are indefinite and uncertain, is void notwithstanding chapter 701 of Laws of 1893, because it suspends the alienation of property beyond two lives in being. (*Holland* v. *Alcock,* 108 N. Y. 312; *Fairchild* v. *Edson,* 154 N. Y. 199; Fowler on Charitable Uses, 90, 91, 105–107, 111; Chapman on Express Trusts, § 514; Thomas on Estates, 847–866; *Owens* v. *Missionary Society,* 4 N. Y.

385 ; *Wetmore* v. *Parker*, 52 N. Y. 450 ; *Iseman* v. *Myres*, 26 Hun, 651 ; *Bird* v. *Merklee*, 144 N. Y. 544 ; *Holmes* v. *Mead*, 52 N. Y. 332 ; *White* v. *Howard*, 46 N. Y. 144 ; *Marx* v. *McGlynn*, 88 N. Y. 357 ; *Downing* v. *Marshall*, 23 N. Y. 382.) The will of the testator does not direct the Graves Home for the Aged to be founded or maintained by a corporation to be formed within two lives in being at his death. (1 Perry on Trusts, § 38 ; *Tilden* v. *Green*, 130 N. Y. 29 ; *People* v. *Simonson*, 126 N. Y. 299 ; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108 ; *Cruikshank* v. *Home of Friendless*, 113 N. Y. 337 ; *Burrill* v. *Boardman*, 43 N. Y. 254 ; *Shipman* v. *Rollins*, 98 N. Y. 311 ; *Lougheed* v. *D. B. Church*, 129 N. Y. 211 ; *Starr* v. *Starr*, 132 N. Y. 158 ; *Matter of Schweigert*, 17 Misc. Rep. 186 ; *Benjamin* v. *Welch*, 73 Hun, 371.) The testator did not intend to create a permanent trust for the support of the aged poor, to be managed by trustees during the period of two lives in being, and then to vest in the Supreme Court by virtue of the act of 1893. But if the contrary is the true construction of the residuary clause the same is still void. (*Bascom* v. *Albertson*, 34 N. Y. 592 ; *Holland* v. *Alcock*, 108 N. Y. 329 ; *People* v. *Powers*, 147 N. Y. 104 ; *Fairchild* v. *Edson*, 154 N. Y. 199 ; *Tilden* v. *Green*, 130 N. Y. 29.) If the will directs the formation of a corporation within the lives of Catherine Roby and Helen Graves, or vests the title in the Supreme Court to maintain the charity at the expiration of those lives, the residuary devise and bequest is void as to the bank stock and real estate south of James street, because it suspends the alienation of property during three lives in being. (*Hobson* v. *Hale*, 95 N. Y. 588 ; *Amory* v. *Lord*, 9 N. Y. 403 ; *Shipman* v. *Rollins*, 98 N. Y. 311 ; *Matter of Russell*, 5 Dem. 388.) If the residuary gift fails as to the bank stock and the real property south of James street, the whole of the residury devise and bequest should be declared void. (*Tilden* v. *Green*, 130 N. Y. 29 ; *Holmes* v. *Mead*, 52 N. Y. 332.) If the residuary gift is valid, the testator has left more than one-half of his

property in trust for charitable corporations or associations in violation of chapter 360 of the Laws of 1860. (*Hollis* v. *D. T. Sem.*, 95 N. Y. 166; *Harris* v. *A. B. Soc.*, 2 Abb. Ct. App. Dec. 316; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Amherst College* v. *Ritch*, 151 N. Y. 333; *Rich* v. *Tiffany*, 2 App. Div. 25.) There is no equitable conversion of realty into personalty by the terms of this will. (*Chamberlain* v. *Taylor*, 105 N. Y. 185; *Lent* v. *Howard*, 89 N. Y. 169; *Clift* v. *Moses*, 116 N. Y. 144; *Matter of Fox*, 52 N. Y. 530.) Where there are numerous adjudged cases to which a remedial statute by its terms applies, its intent cannot be extended by construction to include other cases excepted therefrom by the ordinary meaning of the language employed. (*Tompkins* v. *Hunter*, 149 N. Y. 123; *F. A. Bank* v. *Colgate*, 120 N. Y. 394; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; *Farrell* v. *Dart*, 26 Conn. 376; *Dean* v. *Reid*, 10 Pet. 524; *Smith* v. *People*, 47 N. Y. 330; *Riggs* v. *Palmer*, 115 N. Y. 506; *Jackson* v. *Collins*, 3 Cow. 89; *Murray* v. *N. Y. C. R. R. Co.*, 4 Keyes, 274; *Tallman* v. *S., B. & N. Y. R. R. Co.*, 4 Keyes, 128.) The plaintiffs are entitled to the costs and extra allowances awarded them in this action. (*Read* v. *Williams*, 125 N. Y. 560; Code Civ. Pro. § 3254.)

*C. Carskaddan* for Sidney B. Breese, administrator, etc., et al., respondents. The residuary trust legacy contained in the tenth clause of the will is invalid for the reason that, under the first and tenth clauses of said will, portions of the estate of the testator are tied up during three lives in being, thus violating the statute of perpetuities. (*Chwatal* v. *Schreiner*, 148 N. Y. 683.) The residuary trust provision in question is invalid because it is practically impossible of execution, and that is a defect which nothing can cure. (3 R. S. [5th ed.] 26, § 118; *Walker* v. *Devereaux*, 4 Paige, 250; L. 1896, ch. 581, § 138; *Tilden* v. *Green*, 130 N. Y. 29; *People* v. *Powers*, 147 N. Y. 104; *Read* v. *Williams*, 125 N. Y. 567; *Prichard* v. *Thompson*, 95 N. Y. 78.) The trial court erred in holding " that by the terms of the testator's will, that portion of the

estate of said testator which is composed of real estate is con-
verted into personal property, for the purpose of distribution
and the carrying out of the provisions of said will." (*Scholle*
v. *Scholle*, 113 N. Y. 261; *Fraser* v. *Trustees*, 124 N. Y.
479.) If the trust provision in the tenth clause of said will
should be upheld, then that provision and the legacies given
in the third to the seventh clauses of said will, taken together,
amount to more than one-half of the testator's estate, and
should be so proportionately reduced that the aggregate of
the same shall not exceed more than one-half of the estate,
after the payment of the testator's debts, in accordance with
chapter 360 of the Laws of 1860. (*Chamberlain* v. *Chamber-
lain*, 43 N. Y. 424; *Amherst College* v. *Ritch*, 151 N. Y. 283.)

· PARKER, Ch. J.   Under the law of this state, prior to the
enactment of chap. 701 of the Laws of 1893, the tenth clause
of the will in question would have been void upon two
grounds: *First*, because of the indefiniteness of the bene-
ficiaries (*Bascom* v. *Albertson*, 34 N. Y. 584; *Tilden* v. *Green*,
130 N. Y. 29); and, *second*, because, although intending to
found a permanent charity, the testator did not direct the for-
mation of a corporation within two lives in being to take over
the trust property. (*Burrill* v. *Boardman*, 43 N. Y. 254;
*Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337;
*People* v. *Simonson*, 126 N. Y. 299.)

The question now presented is, whether the act of 1893 has
so far amended the law relating to the subject of charitable
bequests, as to make it possible for the charitable intentions of
this testator to be executed.   Before examining the statute,
which was concededly intended to affect in some wise the law
upon the general subject, it will not be out of place to have
in mind the situation of such law.   No one disputes that it
was the intention of the legislature to change in substantial
respects the law as it had been settled by the courts of this
state.   The controversy is as to the extent of the changes
intended by the legislature, and upon the question of intent
some light will be thrown by a very brief reference to the

early state of the law in this state upon the subject of charitable uses, and the changes from time to time which finally resulted in its overthrow. This subject was exhaustively considered in an opinion written by Judge DENIO in the case of *Williams* v. *Williams* (8 N. Y. 525). In that case the opinion declared that, according to the law of England, as it existed at the time of the American revolution, and as it still exists, devises and bequests in support of charity and religion, although defective for want of such grantee or donee as the rules of law require in other cases, would, nevertheless, be supported in the courts of chancery; that such parts of the common law had become incorporated into our system of jurisprudence prior to the adoption of the Constitution, by force of the provisions of which they became a part of the common law of this state. In answer to the claim that the law of charitable uses was created by the statute 43 Eliz. c. 4, and, hence, was abrogated by the repeal in this state of the statute of Elizabeth (Laws 1788, chap. 46, § 37), the court asserted that the doctrine of charitable uses was a creation of chancery and had been regarded as an important part of its jurisdiction long prior to the enactment of the statute of Elizabeth, and such system having become engrafted upon the common law, and the practice thereof having been undertaken and carried on by the Court of Chancery in this state, that it was not affected by the repeal of the statute of Elizabeth; that the provisions of the Revised Statutes did not affect property given in perpetuity for religious or charitable purposes, and, hence, that the bequest of $6,000 to Zophar V. Oakley and other individual trustees, with power to perpetuate their successors, as a perpetual fund for the education of children of the poor who should be educated in the academy in the village of Huntington, with directions to accumulate the fund up to a certain point, and apply the income to the education of children whose parents' names were not upon the tax list, was valid.

If that case had continued to be the law of this State there would have been no opportunity for questioning the validity of the tenth clause of this testator's will. That decision,

it would seem, should have settled the question in this state, but the struggle between the advocates of a liberal policy towards charities and the opponents of such a policy, did not stop with that decision. In *Levy* v. *Levy* (33 N. Y. 97) Judge WRIGHT challenged the position taken by the court in the *Williams* case, and discussed anew the question whether the English doctrine of trusts for charitable uses was the law of this state. The discussion was continued in *Bascom* v. *Albertson* and *Burrill* v. *Boardman* (*supra*), and in *Holmes* v. *Mead* (52 N. Y. 332) it was finally decided that the system of charitable uses, as recognized in England prior to the revolution, has no existence in this state, and that such uses are not exempt from the provisions of the statute abolishing all uses and trusts, except such as are authorized thereby. Efforts in the interest of upholding important charitable bequests have, from time to time, been made to persuade the courts to reopen the subject to a limited extent, without other result than an approval of the case of *Holmes* v. *Mead*, as in *Holland* v. *Alcock* (108 N. Y. 312), where the court felt called upon to point out that " charity, as a great interest of civilization and christianity, has suffered no loss or diminution in the change which has been made. The law has been simplified, and that is all." So the fact seemed to be at the time of such writing, and so it may have been, except as to that class of charities which, for convenience, we may call original charities, as where a person desires to found an institution to carry on a charity that will bear his name and be a monument to his memory, or wishes to benefit a class of unfortunate persons in his own community in whom he may be interested. Many a testator has attempted to provide by his last will and testament for such a charity, but, so far as the decisions show, nearly every such attempt has come to naught, because the courts, in applying the rules resulting from the final overthrow of the *Williams* case, have been obliged to hold that the language employed by the testator was either indefinite as to beneficiaries or in violation of the law against perpetuities. (*Holmes* v. *Mead*, 52 N. Y. 332 ; *Prichard* v. *Thompson*, 95

N. Y. 76; *Cottman* v. *Grace*, 112 N. Y. 299; *Read* v. *Williams*, 125 N. Y. 560; *Fosdick* v. *Town of Hempstead*, 125 N. Y. 581; *Tilden* v. *Green*, 130 N. Y. 29; *Booth* v. *Baptist Church*, 126 N. Y. 215.) Our attention has not been called to, nor have we discovered any case in the books since the decision of *Holmes* v. *Mead* where an attempt to create an original charity has survived the test of an application by the courts of the rules of law to the language employed by the testator. Among the last, if not the very last, of the successful attempts in that direction was in respect to the will of James H. Roosevelt, deceased, which was before the court in *Burrill* v. *Boardman* (43 N. Y. 254). In that case the court declined to decide the question whether the peculiar system of charitable uses as it existed in England has ever had foothold in this state. The decision of this court, holding that will to be valid, made Roosevelt Hospital a possibility. As these statements seem to make their own comment, we pass to the position of the legislature in 1893, which had its attention sharply drawn to the subject by a comparatively recent decision of this court, the effect of which was to deprive the public of a great charity, in which Samuel J. Tilden sought to employ the bulk of his fortune, aggregating millions. Looking back over the twenty years that had elapsed since the decision of the court in *Holmes* v. *Mead*, the legislature could discover nothing but wrecks of original charities, charities that were dear to the hearts of their would-be founders, and the execution of which would have been of inestimable value to the public. Further back of that period, however, it found that in *Williams* v. *Williams* (*supra*) the court had declared it to be the law of this state that charitable devises and bequests were not subject to the statute against perpetuities, nor subject to strangulation by the rule against indefinite beneficiaries, for the court, having equitable jurisdiction, claimed the right to administer the law of charitable uses. Our legislature not only saw that a great wrong had been and was being done to the public by the loss of many devises and bequests for the purpose of founding original charities, but

it further saw that the remedy could alone be furnished by it. It perceived that its repeal of the statute of Elizabeth furnished the foundation for the decisions of the courts and did away with the law of England upon that subject, as well as with the practice in this country in that regard which had been founded upon such law, so it set about making a change in the law, and the statute which it enacted, together with the title, reads as follows : " An act to regulate gifts for charitable purposes. Section 1. No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall, in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such lands or property shall vest in the supreme court.

" § 2. The supreme court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act. The attorney-general shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trusts by proper proceedings in the court." (Laws of 1893, chap. 701.)

Reading the statute in the light of the events to which reference has been made, it seems to me very clear that the legislature intended to restore the law of charitable trusts as declared in the *Williams* case ; that having discovered that legislative enactment had operated to take away the power of the courts of equity to administer trusts that were indefinite as to beneficiaries, and had declared a permanent charity void unless the devise in trust was to a corporation already formed or to one to be created, it sought to restore that which had been taken away through another enactment. This is markedly indicated, not only by the absence of details in the statute,

which is broadly entitled " An act to regulate gifts for charit-
able purposes," but also in the brevity of the statute, which
confers all power over such trusts and trustees on the Supreme
Court and directs the attorney-general to represent the bene-
ficiaries in cases within the purview of the statute, as was the
practice in England. Practical effect can be given to the pro-
vision that no devise or bequest shall be deemed invalid by
reason of the indefiniteness or uncertainty of the persons desig-
nated as beneficiaries only by treating it as a part of a general
scheme to restore to the courts of equity the power formerly
exercised by chancery in the regulation of gifts for charitable
purposes ; for, in order to ascertain the class of persons who
were entitled to the benefits of the trust, the rule formerly in
force must necessarily be invoked by which the court ascer-
tained as nearly as possible the intention of the testator, by
decree adjudged who were intended to be the beneficiaries of
the trust and directed its administration accordingly.

Fowler, in his work on " Charitable Uses," in speaking of
the act of 1893, says : " It must be very obvious that the act
of 1893 has seriously affected those decisions of the courts of
New York which require great certainty or a vested interest
in the beneficiaries of a charitable trust. The act, in this
respect only, is designed to restore the ancient law touching
charitable uses for uncertain persons, and to this extent to
relieve charitable trusts from the narrow boundaries prescribed
by the Revised Statutes for private uses in lands." While
that learned author expresses the opinion that the act does not
relieve charitable or public uses from the application of the
rules relating to perpetuities, which, he says, " have no refer-
ence to public trusts," he asserts that had that been done the
ancient law would have been almost revived by the legisla-
ture. That he is right in saying that the legislature " designed
to restore the ancient law touching charitable uses for uncer-
tain persons " seems unquestionable, and it appears to be
reasonably clear, from a reading of the entire act, that the leg-
islature designed to restore the law governing the administra-
tion of such trusts as well. And if such was the design of the

legislature, then effect must be given to it, though such a construction seems contrary to the letter of the statute. (*Smith* v. *People*, 47 N. Y. 330.) As this statute is remedial in its character, it should be liberally construed with a view to the beneficial end proposed. (*Hudler* v. *Golden*, 36 N. Y. 446.) The statute provides that if there is a trustee named to execute the trust, the legal title to the property shall vest in such trustee, and, further, that if no person be named as trustee, the title shall vest in the Supreme Court. That there might be no opportunity for questioning the authority of the Supreme Court in such matters, the second section provides that the Supreme Court shall have control over all gifts, grants, bequests and devises in all cases provided by section one of this act. Under the provisions of the act a testator may name a corporation as trustee, or provide that a corporation to be founded shall act as trustee, or the trustee named may be an individual; but if he name none of these, the statute provides in effect that the trust shall not fail, but the title to the property devised or bequeathed in trust shall vest in the Supreme Court, which shall have control over gifts, grants, bequests and devises provided for by the act. If the contention be well founded that it was not the intention of the legislature to revive the ancient law as to the administration of such trusts by the Supreme Court, and to do away with the rule requiring the formation of a corporation for such purpose, then no permanent charity can be administered by the Supreme Court, notwithstanding the title to the trust property is by the command of the statute vested in the Supreme Court when no trustee is named by the testator. It is insisted that it cannot be, because the trust term is not measured by lives. Neither is a corporation, which may, as a trustee, execute a permanent trust for charity. But, it is answered, the law has created an exception to the general rule in favor of corporations. True, and the law-making power had the right to create other exceptions or change the law altogether, and it has changed the law as to all cases within the scope of the act, "to regulate gifts for charitable purposes," so that now the Supreme Court must

execute such a trust, if the title to the trust property vests in it under the statute, and shall have control over the administration, if a trustee be named by the testator. A construction of this statute allowing the Supreme Court to execute a permanent charity when the title to the real estate is vested in it, and at the same time declaring that where such property is devised to a trustee named the devise is void, would be absurd.

The learned counsel for the respondent points out that it is not all gifts and devises to religious, educational, charitable or benevolent uses, that shall not be deemed invalid by reason of indefiniteness as to beneficiaries, but only such as "shall in other respects be valid under the laws of this state," and with signal ability seeks to persuade us that in order to give these words effect it must be held that a trust is not within the protection of the statute if it contravenes the law against perpetuities, and, as a necessary sequence, that if the devise in trust be not to a corporation, or provision be not made for the formation of a corporation, within a period measured by two lives in being, to take over the trust estate, then the devise or bequest is invalid, and this statute is without effect in such case. It will be observed that if this contention be well grounded the authority attempted to be conferred upon the Supreme Court to take title and execute a trust of a permanent character when no trustee is named, is practically of no effect, and the statute itself is limited in its application to a case of the type of *Prichard* v. *Thompson* (95 N. Y. 76), which is the single case brought to our attention where the only objection to the validity of the trust was that the beneficiaries were indefinite. In the light of the destruction of so many original charities, as shown by the decisions, the thought cannot for a moment be indulged in that the legislature had in view this case only and sought to furnish a remedy for just such cases in the future, and for none other.

We are thus led to inquire whether this clause in the statute may not have been intended to serve some other purpose than to require the continuance of the practice of the formation of corporations for the administration of permanent, charitable

trusts, a result apparently in conflict with the other provisions
of the statute providing for the execution of trusts by trustees
or by the Supreme Court. In the attempt to ascertain the
intention of the legislature, it is a just rule, always to be
observed, that the court shall assume that every provision of
the statute was intended to serve some useful purpose, and in
obedience to that rule, we now inquire whether this clause of
the statute does not have a useful place therein, and yet is not
in conflict with the letter and spirit of the rest of the statute.
It is so obvious that it has that we need cite but one instance
for the need of such a provision, and that is suggested by one
of the contentions made in this case. A., having a substantial
estate and desiring to provide suitably for the support of his
wife and two brothers during their lifetime, for which he
deemed the income amply sufficient, devised his estate in
trust to a trustee during the lifetime of his wife and brothers,
directing that the income be apportioned between the *cestuis
que trust* during their lives, and that after the death of the
last survivor of them the property be vested in the Supreme
Court as a permanent trust, the income to be used toward the
support and maintenance of the Syracuse Hospital. Such a
trust would, of course, be in direct violation of the Statute
of Perpetuities and void, for by it the testator would design
to do what the statute aims to prevent from being done,
namely, to tie up the estate for the benefit of his family
for a period longer than two lives in being, *i. e.*, three
lives in being, before the trust for charitable purposes
could go into operation. This clause, therefore, seems to
constitute a very useful feature indeed of the statute, and
because this is so all excuse is taken away for an argu-
ment that it was intended to serve as such an obstruction
to a practical operation of the statute as would render it
of no substantial value to the public, and it eliminates all
opportunity for questioning that it was the intention of the
legislature to restore the ancient law as to gifts for charitable
purposes, because experience has shown that as to original
charities far better results were obtained under it from the

19

public point of view, and with a more decent regard for the
wishes of testators, who do not always love their distant rela-
tives, occasionally perhaps with justification.

We are thus conducted to an examination of the tenth
clause of the will. It reads as follows: " *Tenth.* I give,
bequeath and devise all the rest and residue of my property
of every kind, personal and real, wherever situate, to my trus-
tees hereinafter named, for the purpose of founding, erecting
and maintaining Graves Home for the Aged, to be located in
the city of Syracuse, in the state of New York. It is intended
for a home for those, who by misfortune have become incapa-
ble of providing for themselves, and those who have slender
means of support. The institution to be known as The
Graves Home for the Aged. I hereby appoint Charles C.
Stevens, Rasselas A. Bonta and Maurice A. Graves for the
trustees to execute the above trust. I hereby authorize and
empower my executors, or the survivor of them, to rent or
sell any part or all of my real estate, that I may own at the
time of my death. They are authorized to employ a person
or persons to have charge of the real estate to collect rents
and to make repairs, and to pay such sum for compensation
as they may deem reasonable and proper.

" After my executors have executed their trust and paid
all the legatees provided for in this will, they are authorized
and directed to convey to the said trustees, above named, the
balance and remainder of my property, of every kind, to be
applied for the purposes above provided, and the said trustees,
or the survivor, are authorized to rent or sell all or any part
of my real or personal property, and to employ such agents as
they may deem proper to take charge of the same, and pay
them such compensation as they deem best."

While the place where " Graves Home for the Aged " is to
be located is stated, and the general object of the charity is
clearly given, namely, to provide a home for the aged who by
misfortune have become incapable of providing for them-
selves, it is still indefinite as to the territory from which such
aged people may be accepted at the home. But for the statute

that we have been considering, this trust would fail because of the indefiniteness of the beneficiaries, but the practice that it revives makes it necessary for the Supreme Court, when properly moved by the attorney-general representing the beneficiaries, to ascertain, as nearly as may be, the intention of the testator as to the method of selecting those aged persons who are to be the beneficiaries of the home, and to make such intention efficacious by decree.

It seems to have been the opinion of the Appellate Division that the power of alienation of the bank shares and the real estate south of James street was, under the terms of the will, suspended during three lives in being after the death of the testator, but to us it seems that this is not so.   It is true that, by the first clause of the will, the trustees were directed to pay to testator's wife during life the dividends on the bank stocks when declared, and the net income from the real estate after making payments for necessary repairs and taxes, while by the eleventh provision of the will the testator authorized his executors and trustees to retain his shares in the "New York State Banking Company" for a term of years at their discretion, "but may sell the same, or any part thereof, at any time, but the same is not to be continued nor any portion of my property held longer than the lives of Catharine Graves Roby, daughter of Sidney B. Roby, of Rochester, and Helen Breese Graves, daughter of Maurice A. Graves, of Syracuse." It will be observed, therefore, that the will operated to vest the title of the estate in the trustees, in trust for the purposes outlined by the testator, as of the date of the latter's death ; and they were directed to pay to the widow certain rents and dividends for life, unless she survived two persons upon whose lives the trust estate was expressly limited.

The next question is whether this trust is to be executed by the trustees named in the will or by the Supreme Court.   It is the next question because we have already reached the conclusion that a corporation is not necessary for the execution of such a trust since the adoption of the statute, but that the Supreme Court in a proper case must take upon itself such

execution, over which it shall have control where a trustee is not named for the purpose. In this case trustees were named, and, as the eleventh clause of the will expressly prohibits the trustees from holding any portion of the testator's property longer than the lives of the two persons in being therein named, it must be held that the trustees are charged with the management and conduct of the trust until the expiration of a period measured by the two lives in being, at which time the title to the trust property will vest in the Supreme Court under the statute.

The plaintiffs claim that the tenth provision of the will is void as to one-half of the remainder of the testator's estate under section 1, chapter 360 of the Laws of 1860, which reads as follows: "Section 1. No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts (and such devises or bequests shall be valid to the extent of one-half and no more)."

The testator gives about twenty-five thousand dollars, or less than one-seventh of his estate, to organizations that are within the description of the statute, and in addition to that the residuary devises and bequests are charitable, and, therefore, within the general description of the statute; but as such devises and bequests are not to a "society, association or corporation in trust or otherwise," but instead to trustees, they are not within its prohibition. The maxim "*expressio unius est exclusio alterius*" is applicable; for it is a man's general right in this state to do as he wishes with his own. He may now, as in the past, disinherit his relatives for the benefit of strangers, and this statute was not designed to affect that right except indirectly. It was recognized, perhaps, that in the fear of death, men who have never exhibited a charitable impulse, suddenly awaken to the fact that behind them are lost opportunities for usefulness, that in some way ought to be made

good, and in order to balance the account they look about for
an opportunity to do good with their money, and find at once
a man interested in promoting the fortunes of some religious
or charitable institution, who, without hesitation, begins to
play, and with a skill acquired by long experience, upon their
fears and hopes.   Given such a man and such a situation, it
was readily conceived that in his thought of self the just
demands of wife, or child or parent might be temporarily lost
sight of, and his all devoted to religious or charitable purposes
through some of the many societies, associations and corpora-
tions which are to be found on every hand.   Hence, the
design of the framers of the statute was to place a limitation
upon the power of a person thus moved, to dispose of more
than one-half of his property by will to such organizations, to
the end that he should have an opportunity to measure the
claims of his kindred upon him as to the remaining half unem-
barrassed by the importunities of those whose business it is
to get money for the societies, associations or corporations
they represent, and this it was thought would be substantially
accomplished by an act prohibiting him from giving more than
one-half of his property to the societies, associations and cor-
porations most likely to be considered.   But except as thus
restrained by the statute, he may still disinherit his kindred
by disposing of his property in such manner and for such pur-
pose as he may desire, and so this testator in devising his
property to trustees in trust for the uses and purposes described
in the will, was not within the prohibition of the statute.   The
result thus reached in this case in no way thwarts the general
purpose of the legislature, for the only person who stood in
such relation to the testator as to benefit by the statute in any
case was the testator's wife, who was over eighty years of age
at the time of his death, was amply provided for by the will
and has since died.

The amount of costs awarded seems to be out of all pro-
portion to the work done, and so large that it is not at all sur-
prising that several lawyers have appealed from nearly all
allowances except their own; but the Supreme Court had the

power in this suit, brought as it was on the equity side of the court, to award costs to each of the parties, and the question of amount also was in the discretion of that court and not subject to review here so long as the allowances did not exceed the limitations provided by statute, and this they did not do.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs to the appellant trustees and to the attorney-general.

GRAY, J. (dissenting).  I cannot agree in the view, as expressed in the prevailing opinion, that the legislature, through the enactment of chapter 701 of the Laws of 1893, intended to restore the law of charitable trusts, as it was declared to be in the case of *Williams* v. *Williams* (8 N. Y. 525).  However praiseworthy the attempt to give such a construction to the statute, it meets with an insuperable difficulty in the plain and precise language, of which the legislature has made use, and to infer a legislative intent without adequate support in statutory expressions is without justification and an unwise exercise of our judicial powers.

The testamentary disposition of the residuary estate, in this will, presented two marked features; namely, first, that of a trust, which, for suspending the power of alienation indefinitely, was void under the statute against perpetuities, and, second, that of indefiniteness in the beneficiaries, who would be entitled to take the equitable title and to enforce the trust.  The proposition of the appellants is that, because the act of 1893 is applicable to cure the defect of indefiniteness, it necessarily extends further and protects the will against the operation of the statute against perpetuities.  The argument is that the act excepts such cases, because indefiniteness of beneficiaries and suspension of the power of alienation are too closely connected to be separated.  I quite fail to perceive any basis for this argument.  The statute, itself, defines and limits its application to cases of indefiniteness of beneficiaries; for it specifies gifts, etc., "*which shall in other respects be valid under the laws of this state.*"  That is unambiguous language

and how shall we permit ourselves to infer, notwithstanding,
that the legislature intended to except such a case as this, or,
possibly, other cases which might be imagined, where there
is a statutory reason for holding the gift to be void? The
effort is to enlarge the scope of the act of 1893 beyond
either its literal import, or its spirit, upon the theory that the
legislature has revested the courts with the power of uphold-
ing charitable trusts to the full extent previously enjoyed by
the English courts at common law. It was held in the *Wil-
liams Case (supra)*, that the repeal of the statute of 43 Eliza-
beth by the legislature of this state in 1788, (Chap. 46, Laws
of 1788), did not affect the jurisdiction of our equity courts
to administer a charitable trust for indefinite beneficiaries;
inasmuch as they had succeeded to the powers of the English
courts of chancery, which did not depend for their exercise
upon the statute of Elizabeth, but had, prior thereto, carried
out such a trust according to the *cy-pres* doctrine. So it was
reasoned that, as charitable trusts, at common law, were deemed
to be excepted from the rule against perpetuities, the exception
obtained under our laws. This doctrine, which was declared
in the *Williams case*, was, however, soon overruled and in a
line of decisions of this court from *Levy* v. *Levy* (33 N. Y.
97), down to *Holland* v. *Alcock* (108 N. Y. 312), it was held
that the legislature, in repealing the statute of Elizabeth,
intended to, and did, abrogate the whole law of charitable
uses as understood and enforced in England. (And see *Bas-
com* v. *Albertson*, 34 N. Y. 584; *Holmes* v. *Mead*, 52 *ib.*
338.) That statute was passed for the purpose of regulating
gifts for charitable purposes and its repeal in 1788, impliedly,
deprived our courts of any inherent jurisdiction which other-
wise they might have claimed to possess. The Supreme
Court of the United States, in *Philadelphia Baptist Associa-
tion* v. *Hart* (4 Wheat. 1), had held that charitable uses had
their origin only in the statute of Elizabeth. This jurisdic-
tion, therefore, to uphold charitable trusts must rest upon the
law of the state, as declared in its statutes and as construed
by judicial decisions. By the repeal, in 1788, of the English
statutes and by subsequent legislation, authorizing incorpora-

tions for various religious and charitable purposes, abolishing all uses and trusts except those in terms specified and subjecting trusts and powers in trust to the statute against perpetuities, the state established a policy and system of her own.

As to testamentary trusts for charitable, or non-charitable, objects, no distinction was recognized. In either case, as the law was settled prior to the act of 1893, there must be a definite beneficiary, capable of taking the equitable title and of enforcing the trust, and the trust must be a clearly defined one and not in contravention of the statute against perpetuities. (*Levy* v. *Levy, Holmes* v. *Mead* and *Holland* v. *Alcock, supra*). A charitable trust in perpetuity could only be validly worked out through the medium of a corporation endowed with corporate powers to execute it. (*Wetmore* v. *Parker,* 52 N. Y. 450; *Bird* v. *Merklee,* 144 N. Y. 544.) How can it be said that the act of 1893 has changed the settled rules respecting testamentary gifts to charitable uses, otherwise than that, thereafter, none such shall be deemed invalid, solely, because of indefiniteness and uncertainty as to the persons designated as the beneficiaries? The appellants say that to give the act substantial effect, it must except charitable trusts from the operation of the statute against perpetuities. In the prevailing opinion, the view is taken that the legislature acted in the light of past events and was moved by the repeated failures of testamentary dispositions for charitable purposes, in passing the act, and that an intention is evident to restore the law of charitable trusts as declared in the *Williams* case. It is thought that the legislature sought to restore that power in courts of equity to administer trusts, which had been taken away by the enactment of 1788. How can such an intention be said to be clear from a statute, which expressly excludes from its operation any case, where the gift or trust is void for other reasons than indefiniteness or uncertainty of the beneficiary? And how can such a statute, which relieves a trust from that particular objection, be likened in its scope of operation to the statute of 1788, which repealed the English statute, defining and regulating the whole system of gifts for charitable pur-

poses? How · can it be, reasonably, said that it revested the courts with those wide powers over charitable trusts, of which they had been deprived by the earlier statute? I do not doubt that the legislature would be justified in doing so; but to give the present act that meaning, is, in my opinion, not justified by the rules for the construction of statutes and subjects us to the charge of judicial legislation.

In construing statutes, we resort to the natural signification of their words and if they bear a definite meaning, and the language is precise, we give effect to the law as expressed. We should not indulge in conjecture as to intention, if an intention is clearly expressed in the language; for the language of a statute is presumed to declare the intention.

What the act of 1893 meant, and what it said, was that a charitable gift, which would, theretofore, have been held void, solely by reason of the indefiniteness of the beneficiaries, shall no longer be deemed void on that account. If it is, also, void at common law, or under the laws of this state, for other reasons than indefiniteness of beneficiaries, it will not be rendered valid by the act of 1893. How inadequate, or insufficient, may be the relief afforded by the act, in cases of gifts for charitable purposes, is not the question. That is a question for the consideration of the legislative body. It needs no argument to show that it has an application to gifts which are to take effect immediately, or within the statutory period of two lives in being at the testator's death, as to unincorporated charitable associations or uncertain persons. Whatever the scope of its application, if a wider one is desirable (and I am not indisposed to think it is), the remedy is with the legislature.

As briefly as possible, I have expressed my reasons for not concurring with the views of my associates in their determination to reverse this judgment and I have been moved to do so, because I regard their decision as opposed to the laws of the state, which regulate our system of trusts, and as overruling, quite unnecessarily and without real warrant in the act of 1893, the previous decisions of this court.

20

BARTLETT, J. While I agree with Judge GRAY as to the construction of chapter 701 of the Laws of 1893, I am of opinion that by reading the tenth and eleventh subdivisions of the will together, and otherwise construing the instrument in a manner that need not now be stated, it can be held that the statute against perpetuities is not violated, and, therefore, reach the same result as the prevailing opinion.

All concur with PARKER, Ch. J., for reversal (BARTLETT, J., in result on other grounds, as stated in memorandum), except GRAY, J., who reads dissenting opinion, and VANN, J., not sitting.

Judgment reversed, etc.