(85 App. Div. 414.)

### MURRAY et al. v. MILLER et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. WILLS—CONSTRUCTION—REMAINDER.

By testator's will he gave a life estate in all his property to his wife, and the remainder thereof at her death to "the person who shall then be known and recognized by the unincorporated ecclesiastical body now calling itself and known by the style of 'The Synod of the Reformed Presbyterian Church in North America' as its treasurer, in trust, to apply the same to the uses and for the benefit of such body." *Held*, that testator intended the title to the real estate to vest on his death absolutely in the devisee, subject to his wife's life estate.

2. SAME—DEVISE TO ECCLESIASTICAL BODY.

At the time the will was executed and at the date of testator's death there was an unincorporated ecclesiastical body known as the "Synod of the Reformed Presbyterian Church in North America," being the governing body of the church of the same name, with a treasurer. There was also at the time of his death a corporation called the "Trustees of the Synod of the Reformed Presbyterian Church of North America," organized subsequent to the date of the will, and entirely distinct from the former body, with authority to receive all such property as should be given to it, either by the synod and its treasurer, or by others, for use of the church, and which by consent of the synod of the church had acted with reference to the things intrusted to it as the financial agent and trustee of the synod. *Held*, that the devise was to the person who at testator's death should hold the position of treasurer of the unincorporated body.

**3. SAME—CESTUI QUE TRUST.**

The cestui que trust was the unincorporated ecclesiastical body.

**4. SAME—WHEN VESTED—VALIDITY—POWER OF DEVISEE TO TAKE.**

Where a will gave a life estate in testator's property to his wife, with remainder at her death to the treasurer of an unincorporated ecclesiastical body, the devise of the remainder vested immediately on testator's death, and its validity depended on the power of the devisee to take at that time.

**5. SAME—TRUST—VALIDITY.**

There was no power of sale, either express or implied, given the devisee in trust, or direction to sell the property, and no provision from which a power of sale could be implied. *Held,* the trust was not a valid one, under section 55 of the statute of uses and trusts (1 Rev. St. [1st Ed.] p. 728, pt. 2, c. 1, tit. 2), providing the purposes for which an express trust may be created.

**6. SAME.**

Laws 1893, p. 1748, c. 701, passed long after testator's death, was not applicable to a trust created by his will, the validity of the trust depending on the laws in force at the time of his death.

**7. SAME.**

Where a trust attempted to be created by testator subject to a devise of a life estate in the property to his wife was invalid, the title to the property vested on his death in his heirs at law, subject to the life estate.

Action by William Murray and others against Walter T. Miller and others. Submission of controversy on agreed case. Judgment for plaintiffs.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Benjamin N. Cardozo, for plaintiffs.
A. C. Brown, for defendants.

INGRAHAM, J. The question submitted upon this controversy is as to the title of certain real estate in the city of New York, the plaintiffs claiming to be the owners of the property, and asking that it be adjudged that they have an estate in fee simple absolute, and recover the possession thereof. The parties consent that the court grant such judgment as upon the facts agreed upon is proper. It is conceded that prior to his death, on the 14th of June, 1876, one James Frazer was seised and·possessed of the property in question; that he died June 14, 1876, leaving a last will and testament, dated the 3d of December, 1862, which was admitted to probate on the 11th day of January, 1877, by the surrogate of the county of New York, and that the testator left a widow, a nephew Robert Murray, and a niece Elizabeth Murray, his heirs at law; that Elizabeth Murray died intestate in the city of New York in the year 1879, without issue surviving, leaving as her sole heir at law her brother, Robert Murray; that Robert Murray died in the city of New York on the 15th day of November, 1899, intestate, leaving him surviving a widow, the defendant Catherine Murray, and four children, as his heirs at law, who are the plaintiffs in this proceeding. The plaintiffs, therefore, claim as the successors in title of the testator's heirs at law. The will of James Frazer gave to his wife a life estate in all of his property, real and personal, and then provided:

"I give the remainder of all my real estate and the residue of my personal estate, at her (his wife's) death, to the person who shall then be known and recognized by the unincorporated ecclesiastical body now calling itself and known by the style of 'The Synod of the Reformed Presbyterian Church in North America' as its treasurer, in trust, to apply the same to the uses and for the benefit of such ecclesiastical body; and if at the time of the death of my wife, there shall be no person known and recognized as its treasurer, then to the person who was at the last preceding meeting of such ecclesiastical body known and recognized as its presiding officer, by whatever name he may have been known, upon the same trust."

The testator's widow died on the 5th of April, 1895.

At the time of the execution of this will there existed in the state of Pennsylvania an unincorporated ecclesiastical body known as "The Synod of the Reformed Presbyterian Church in North America." Said synod was duly constituted in the year 1809, and has had a continuous existence since that time. The Reformed Presbyterian Church was likewise in existence at that time, and has also had a continuous existence since then. Said church is a definite body, having its own distinctive manuals of doctrine and discipline, wherein the conditions of membership in the body are expressly exhibited. It has an enrolled membership, and the synod is composed of ministers and lay delegates who are members of the church. All ordained ministers of the church are members of the synod, and each congregation of the church is represented in the synod by the delegated elder who is elected to said position by the board of elders of each congregation. That synod had, at the time of making the said will of said James Frazer, and continuously since has had, boards of administration appointed by it to carry on the several departments of work of the church, for which boards the synod makes annual appropriations from funds received by it for ecclesiastical uses. The said synod is the supreme ecclesiastical court and the highest governing body of said church.

By an act of the General Assembly of the state of Pennsylvania approved on the 10th day of March, 1871 (P. L. 299), subsequent to the execution of the will, but prior to the death of the testator, the "Trustees of the Synod of the Reformed Presbyterian Church of North America" was duly incorporated. Since this act of incorporation this corporation has been a valid and subsisting corporation under the laws of the state of Pennsylvania, and by the consent of the synod of the said church the corporation has acted with reference to the things intrusted to it as the financial agent and trustee of the synod, and such corporation is a party to this submission. The defendant John T. Morton was at the time of the death of the testator the person known as the treasurer of the body which was known as "The Synod of the Reformed Presbyterian Church of North America," and has ever since that time been and now is the person known and recognized as such treasurer, and he as such treasurer is also a party to this submission. The act of incorporation recites that "whereas, the Synod of the Reformed Presbyterian Church (Old School) of North America have under their control, and subject to their supervision, a theological seminary, a board of education, a domestic mission, a foreign mission, and may have other and additional educational and religious institutions; and whereas, the said

synod, by donations, bequests and otherwise, are possessed of notes, bonds, moneys and other property, to be used for its various benevolent objects, and have reason to expect further donations and acquisitions, to secure said property and accumulations, and to encourage additions thereto, and the better to enable them to manage, invest, reinvest and dispose of such property as they have acquired or may hereafter become possessed of: Therefore" it was enacted that David Gregg and others, and their successors in office, duly elected or appointed in the manner thereafter specified, were made, declared, and constituted a body politic and corporate, in law and in fact, to have continuance forever, by the name and style of the Trustees of the Synod of the Reformed Presbyterian Church of North America. By section 2 of the act the corporation was empowered to take, receive, and hold all manner of lands, tenements, rents, annuities, franchises, and other hereditaments, and all personal property "which heretofore have been granted, bargained, sold, assigned, transferred, devised and bequeathed, or otherwise acquired by the synod of the Reformed Presbyterian Church aforesaid, or to any person or persons, to their use or in trust for them," and the said lands, tenements, etc., were vested and established in said corporation and its successors forever, according to the original use and intent for which such devises, gifts, and grants were respectively made or intended; and such corporations were also authorized to "purchase, have, receive, take, hold and enjoy in fee simple, or of lesser estate or estates, any lands, tenements, rents, annuities, franchises and other hereditaments and personal property, by the gift, grant, bargain, sale, alienation, enfeoffment, confirmation or devise of any person or persons, bodies politic and corporate, capable and able to make the same." The act further provided that the business of the said corporation should be intrusted to a board of trustees consisting of six members of the Reformed Presbyterian Church aforesaid, one-third of whom shall be elected annually by the said synod to serve for three years. The said corporation was also given power and authority to manage and dispose of all lands, tenements, hereditaments, "and other estate whatsoever committed to their care in trust by said Synod of the Reformed Presbyterian Church." The treasurer of said corporation was to be elected by the Synod of the Reformed Presbyterian Church from the members of the board of trustees, but the other officers were to be chosen by members of the board of trustees from among their own number.

It therefore appears that at the time of the death of the testator there was an unincorporated ecclesiastical body in existence, which had been in existence since 1809, known as the "Synod Reformed Presbyterian Church in North America," this body being the governing body of the church of the same name composed of the ministers or clergymen of the church, and of one elder elected from each congregation, and with a treasurer. There was in existence at the death of the testator a corporation created by the law of the state of Pennsylvania, with authority to receive all such property as should be given to it, either by the synod and its treasurer or by others for use by the church, which corporation was regularly incorporated,

with officers in existence and acting under the authority of the law incorporating it.   By the will of the testator he gave a life estate in his real property to his wife, and devised the remainder of that real estate after the death of his widow to the person who should then be known and recognized by the unincorporated ecclesiastical association, the Synod of the Reformed Presbyterian Church in North America, as its treasurer, in trust to apply the same to the uses and for the benefit of such ecclesiastical association.   There can be, I think, no doubt but that this was a vested remainder by which the fee of the real estate of the testator, subject to the life estate of the wife, was intended to be vested in the treasurer of this unincorporated body.   Whatever may be said as to the bequest of the personal property, it seems to me that as to the real estate there can be no doubt but that the title vested absolutely in the devisee upon the death of the testator.   No authority could be implied from the language of this will which would authorize the testator's wife to sell or dispose of it, or to do any more than to enjoy the real property during her life. There is, pure and simple, a life estate to the wife, with a remainder over.

At the death of the testator there were two bodies in existence— one this ecclesiastical association, the governing body of the church, having a treasurer; and the other a corporation organized for the purpose of acting as agent or trustee of such property as should be vested in it for the benefit of the church.   Which of these ecclesiastical bodies was the beneficiary under this will?   The devise is in form to neither, but is to the person who shall be known and recognized by the unincorporated ecclesiastical body, calling itself the Synod of the Reformed Presbyterian Church in North America, as its treasurer.   The devise, therefore, was to the individual who at the death of the testator should hold the position of treasurer of the unincorporated ecclesiastical body.   Such is the express provision of the will, and we are not justified in making a new will for the testator, giving the property to a corporation not in existence when the will was executed, not named by him in the will, and to whom, so far as we know, the testator had no intention of devising his property. But the devise was not absolute.   It was in trust, "to apply the same to the uses and for the benefit of such ecclesiastical body."   Such ecclesiastical body could only relate to the unincorporated ecclesiastical body "now calling itself and known by the style of 'The Synod of the Reformed Presbyterian Church in North America' "; and the first and crucial question is, who was the cestui que trust? To that, it seems to me, there can be but one answer.   It was the unincorporated ecclesiastical body which was then and had been since 1809 in existence in the state of Pennsylvania, known as the Synod of the Reformed Presbyterian Church.   No individual church could be considered the beneficiary.   It was the synod of the church— the representative body, consisting of the ministers and delegates from the various churches who met to control the policy and administer the affairs of the church.   Who could enforce this trust if the trustee had seen fit to·refuse to recognize it.   Certainly nobody, unless it be the synod of the church, which was composed each year of differ-

ent persons, designated by the various churches who as ministers and delegates compose that body. The devise was to the treasurer of that association in trust for the association. This corporation certainly could not have enforced the trust or at any time compelled the devisee to account to it for the property devised to him in trust. This corporation did not in any way stand in the place of the unincorporated ecclesiastical body known as the "Synod of the Church." It was not the incorporation of a body which had theretofore been an unincorporated association, vesting the corporation with the powers theretofore exercised by the unincorporated body, but a distinct corporation, created to act as trustee for the unincorporated ecclesiastical body, and to hold and apply, as directed by that body, such property as should be conveyed, devised, or bequeathed to it. It was entirely distinct from the unincorporated ecclesiastical body, exercising none of its powers or functions, not in any way taking its place or doing the work that the unincorporated had done. There is therefore in this will no clause by which this corporation could be held to be either the devisee of this property or the cestui que trust for whose benefit the property was conveyed to the treasurer of the unincorporated ecclesiastical body. I can see no escape from the conclusion that this will must be read exactly as it was written; that the remainder in the property was devised to the treasurer of the unincorporated ecclesiastical body in trust for that unincorporated association.

The next and remaining question is whether such a trust is valid under the laws of the state of New York? To that question it seems to me there can be but one answer. That a devise or bequest directly to the unincorporated ecclesiastical body would be void is settled by a long line of decisions, which are not now disputed (White v. Howard, 46 N. Y. 144; Owens v. The Missionary Society, 14 N. Y. 380, 67 Am. Dec. 160; Downing v. Marshall, 23 N. Y. 366, 80 Am. Dec. 290; Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609); and it was also settled by controlling authorities that a bequest to a trustee in trust for such an unincorporated body is equally void (Levy v. Levy, 33 N. Y. 107; Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609; Adams v. Perry, 43 N. Y. 487). It is quite unnecessary for us to consider the reasons for this rule of law which had become settled by a long line of adjudications. It is sufficient to say that such is the universal rule that has been applied in this state for many years, and, except as modified by statute passed after this devise in question took effect, is of universal application. Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568.

It is contended by the learned counsel for the defendants that this devise was a future gift, which did not vest or take effect until the intermediate life estate of the widow was extinguished by her death; that meantime, by operation of law, the legal title to Frazer's estate vested in his heirs, subject to the widow's life estate, and subject to being divested on her death, and vested in the individual who

should then, as the will provided, be the treasurer of the synod or its last presiding officer. We think that this construction of the will cannot be sustained; that the devise of the remainder vested immediately upon the death of the testator, and its validity must be judged by the power of the devisee to take at that time. But, if this construction was possible, it would not validate the title of the defendants. In the first place, there is no power of sale, either express or implied, given to the devisee in trust. The real estate is devised to him "in trust to apply the same to the uses and for the benefit of such ecclesiastical body." There was no direction to sell the property, and no provision from which a power of sale could be implied, and consequently no equitable conversion. The trust was not a valid trust under section 55 of the statute of uses and trusts (1 Rev. St. [1st Ed.] p. 728, pt. 2, c. 1, tit. 2, § 55). Nor was the duration of the trust in any way limited upon lives in being at the death of the testator. The trust was created by the will, and its validity must be determined by the law in force at the death of the testator. Whether the estate then vested in the devisee or not is entirely immaterial in determining the validity of the trust. Nor is the provision upon which the title of the defendants rests a simple direction to executors or trustees to pay or divide at a future time the trust estate in their hands. The devise is, "I give the remainder of all my real estate, and the residue of my personal estate, at her death, to the person," etc. Here is a present gift of the remainder of the real estate, and the devisee is to take it in trust for the benefit of an unincorporated ecclesiastical body. The cases of Warner v. Durant, 76 N. Y. 133, and Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709, are not applicable. It was not the proceeds of the property that were to be applied to the uses of the ecclesiastical body, but the property itself. Nor is there any contingency upon which the devise was to take effect. The devise was absolute, the possession of the property devised being postponed only until the death of the testator's wife. Nor was there any clause which indicated an intention of the testator that the property should be held by the trustees for the use of any person or corporation thereafter to come into being, as in Burrill v. Boardman, 43 N. Y. 254, 3 Am. Rep. 694, and other cases which have followed that case. Nor do we think that chapter 701, p. 1748, Laws 1893, is at all applicable.

The testator died long before the passage of that act. The devise was either valid or invalid at the death of the testator. If valid, the remainder vested in the devisee. If invalid, it vested in the heirs at law of the testator; and subsequent acts of the Legislature could not take from the testator's heirs at law the real property that had vested in them, and vest it in another. Nor does the act in terms affect a devise which had gone into effect before its passage. In Dammert v. Osborn, 140 N. Y. 30, 35 N. E. 407, it was held that the act would not affect property that had vested prior to its passage, and that remainder vested either in the devisee or in the heir at law of the testator upon the death of the testator.

It follows, therefore, that there must be judgment for the plaintiffs as prayed for, with costs.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur.

HATCH, J. I concur with Mr. Justice INGRAHAM in his opinion in this case so far as it relates to the existence of the unincorporated association and its incapacity to take under the terms of the will. It still continued in existence, and the corporation defendant represented it only as trustee of its property; but the will in the present case did not make the gift to such trustee for it or to it as a corporation. In no view, therefore, can the incorporation be treated as taking anything by the terms of the will. This view renders it unnecessary to express any opinion as to whether the gift, under the terms of the will, was present or future, as in either event the devise and bequest to the trustee for the unincorporated association is void. The judgment should therefore pass for the plaintiffs.

Judgment ordered for plaintiffs, with costs.