SUSAN MOUNT, as Administratrix with the Will Annexed of MARIA B. MOUNT, Deceased, Respondent, *v.* DANIEL S. TUTTLE, Bishop of Missouri, et al., Respondents, and DANIEL S. TUTTLE, as Senior Bishop of the Protestant Episcopal Church, et al., Appellants.

1. TRUSTS — TESTAMENTARY TRUST TO ACQUIRE LANDS FOR RELIGIOUS PURPOSES IN FOREIGN STATE — MUST BE VALID UNDER LAWS OF THAT STATE. Where a testatrix, who resided in this state, bequeathed to the bishop of the Protestant Episcopal church in Utah and Idaho, in his corporate capacity, and to his successor or successors in office, certain sums, "in trust, nevertheless, to erect therewith, at such place within the limits of his jurisdiction as he or his successor or successors shall select," a church and rectory which shall "be the property of such Protestant Episcopal jurisdiction," the object of the trust is the acquisition of lands in the state of Utah or in the state of Idaho, and the execution of the trust must depend entirely upon its validity under the laws of the state in which the land is to be acquired and held, or on the competency of the donee, upon whom the title is to be conferred, to take and hold lands within that state.

2. WHEN TESTAMENTARY GIFT INVALID FOR WANT OF LEGAL BENEFICIARY — FINDING OF FACT AS TO VALIDITY OF BEQUEST UNDER LAW OF FOREIGN STATE — PRESUMPTIONS. Where there was, at the time of the death of such testatrix, no such corporation as the "Protestant Episcopal jurisdiction" or church of Utah and Idaho, and none has been created since, and the trial court has found as matter of fact, affirmed by the Appellate Division, that under the laws of Utah and Idaho the Episcopal jurisdiction, or church, of those states is not a competent grantee, such finding is not without evidence to sustain it; since, under the will, the duty of the trustee appointed to execute the trust is confined to the selection of a site and the erection of a church and rectory thereon, which were "to be the property of the aforesaid Protestant Episcopal church" of Utah and Idaho, which was at most only a voluntary unincorporated

association, and, therefore, incompetent to take or hold the property under the common law and the laws of this state, and must be presumed to be incompetent to take or hold the property under the laws of Utah and Idaho in the absence of evidence to show that a contrary rule prevails in either of those states.

3. WHEN BEQUEST INVALID FOR ·WANT OF BENEFICIARY CANNOT BE CURED UNDER STATUTE RELATING TO GIFTS FOR CHARITABLE PURPOSES — L. 1893, CH. 701. The incapacity of the Protestant Episcopal church of Utah and Idaho to hold the title to the church and rectory cannot be obviated, under the authority of the statute regulating gifts for charitable purposes (L. 1893, ch. 701), by directing the trustees, after their selection of the site, to organize a corporation in the state in which the site may be located and convey the property to the corporation, since the testatrix did not direct that the church and rectory should be the property of such a religious corporation as her trustees might incorporate, but of the Protestant Episcopal church of the states named, and the statute does not empower the courts to modify or alter the directions of a testator, but merely validates testamentary directions that before its · enactment would have been void, and empowers the courts to enforce the execution of those directions.

· *Mount* v. *Tuttle,* 99 App. Div. 433, affirmed.     · \

(Argued November.23, 1905; decided January 9, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 25, 1905, which affirmed a judgment of Special Term construing the will of Maria B. Mount, deceased.

· The facts, so far as material, are stated in the opinion.

*Charles E. Hotchkiss, Julien T. Davies* and *Charles H. Tuttle* for· Daniel S. Tuttle, appellant and respondent. The intended beneficiary was not the jurisdiction itself as an entity, but rather the congregation and rector of a church to be erected at a point in the territories of Utah and Idaho, or, in a broader sense, the inhabitants of such territories as a class. The beneficial class, as a class, has, therefore, not lost its identity. (*Hopkins* v. *Kent,* 145 N. Y. 363; *Meeks* v. *Meeks,* 161 N. Y. 66; *Hollis* v. *D. T. Seminary,* 95 N. Y. 166; *Riker* v. *Leo,* 115 N. Y. 93; *Fink* v. *Fink,* 12 La. Ann. 301; 1 Jarman on Wills [6th ed.], 315; 1 Redf. on Wills, 379, § 30; ·*Bd. of Education* v. *Ladd,* 26 Ohio St. 210; *Diocese of E.*

*C.* v. *Diocese of N. C.*, 102 N. C. 442 ; *Bd. of Missions* v. *Society*, 9 Phil. 279 ; *De Witt* v. *Chandler*, 11 Abb. Pr. 459.) The bequest, if valid by the law of the domicile of the testatrix at the time of her death, must be upheld by this court and will be valid everywhere. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330 ; *Dammert* v. *Osborn*, 140 N. Y. 30 ; *Hope* v. *Brewer*, 136 N. Y. 126 ; *Wood* v. *Wood*, 5 Paige, 595 ; *Knox* v. *Jones*, 47 N. Y. 389 ; *White* v. *Howard*, 46 N. Y. 144 ; *Jones* v. *Habersham*, 107 U. S. 174 ; *Duggan* v. *Slocum*, 83 Fed. Rep. 244 ; 92 Fed. Rep. 806 ; *Fellows* v. *Miner*, 119 Mass. 541 ; *Ford* v. *Ford*, 70 Wis. 19.) Under the law of New York at the death of the testatrix the bequest, being for a charitable object, was valid. (L. 1893, ch. 701 ; L. 1896, ch. 547, § 93 ; *Allen* v. *Stevens*, 161 N. Y. 122 ; *Matter of Griffin*, 167 N. Y. 71 ; *Matter of Graves*, 171 N. Y. 40 ; *Matter of Watson*, 171 N. Y. 256 ; *Smith* v. *Chesebrough*, 176 N. Y. 317 ; *Rothschild* v. *Goldenberg*, 58 App. Div. 499 ; 103 App. Div. 235 ; *Spencer* v. *H. L. Assn.*, 36 Misc. Rep. 393 ; *Racine* v. *Gillet*, N. Y. L. J. March 30, 1901 ; *Matter of Openhym*, N. Y. L. J. July 25, 1904.) Even if the trustee designated in this will is incompetent to act, or there is no person in being who fulfills the description of such trustee, the bequest is not invalid, either at common law or under the act of 1893. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330 ; *Attorney-General* v. *Goodell*, 62 N. E. Rep. 962 ; *Shotwell* v. *Mott*, 2 Sandf. Ch. 46 ; *McCartee* v. *Orphan Asylum*, 9 Cow. 437 ; *Allen* v. *Stevens*, 161 N. Y. 122 ; *Brigham* v. *Hospital*, 134 Fed. Rep. 513 ; *Mormon Church* v. *U. S.*, 136 U. S. 1 ; *Russell* v. *Allen*, 107 U. S. 163 ; *Eliot's Appeal*, 74 Conn. 586 ; *Wood* v. *Paine*, 66 Fed. Rep. 807.) The bequest is valid under the laws of Utah and Idaho, and hence, irrespective of the act of 1893, will not be declared void by the courts of this state. (*Hope* v. *Brewer*, 136 N. Y. 126 ; *Matter of Sturgis*, 164 N. Y. 485 ; *Kurzman* v. *Lowey*, 23 Misc. Rep. 380 ; *Kennedy* v. *Town of Palmer*, 1 T. & C. 581 ; *Doty* v. *Hendrix*, 16 N. Y. Supp. 284 ; *Ostrom* v. *Greene*, 161 N. Y. 353 ; *Mormon Church* v. *U. S.*, 136

U. S. 1; *Williams* v. *Williams,* 8 N. Y. 525; *Grissom* v. *Hill,* 17 Ark. 483; *Estate of Hinckley,* 58 Cal. 457.) The Appellate Division erroneously decided that the act of 1893 applied only to charities to be established in this state. (*Smith* v. *Chesebrough,* 176 N. Y. 317; *Matter of Duncan,* L. R. [2 Ch. App. Cas.] 356; *Murray* v. *Miller,* 178 N. Y. 316; *Pell* v. *Mercer,* 14 R. I. 412; *Leak* v. *Leak,* 78 S. W. Rep. 471; *Frazier* v. *St. Luke's Church,* 147 Penn. St. 256.) Under the common-law system of charities restored in this state by the act of 1893, funds bequeathed to foreign charitable uses are regularly remitted and are subject to the jurisdiction of the foreign courts. (*Allen* v. *Stevens,* 161 N. Y. 122; *Williams* v. *Williams,* 8 N. Y. 525; *Provost* v. *Aubery,* Amb. 236; *Oliphant* v. *Hendrie,* 1 Bro. C. C. 571; *Ould* v. *Hospital,* 95 U. S. 303; *Mackintosh* v. *Townsend,* 16 Ves. 330; *Atty.-Gen.* v. *Lepine,* 2 Swanst. 181; *Atty.-Gen.* v. *Stephens,* 3 M. & K. 347; *Lyons* v. *E. I. Co.,* 1 Moore P. C. 175; *Thompson* v. *Thompson,* 1 Coll. 381.)

*William G. Low, Robert G. Mead, Jr.,* and *Archibald M. Langford* for James B. Funsten et al., appellants. The law of the domicile of the testatrix at the time of her death governs this case. (*Dammert* v. *Osborn,* 140 N. Y. 30; *Hope* v. *Brewer,* 136 N. Y. 126; *Cross* v. *U. S. T. Co.,* 131 N. Y. 330.) Even did the law of Idaho rather than that of New York govern, the bequest should be upheld. (*Matter of Bonard,* 16 Abb. Pr. [N. S.] 128; *Graham* v. *De Witt,* 3 Bradf. 186; *Staines* v. *Burton,* 17 Utah, 331.)

*William H. Hamilton* for Maria L. Mount et al., respondents. The gifts were invalid as being impossible of administration in the foreign jurisdictions, and as made to and for parties without capacity to take, enforce or administer. (*Waldon* v. *Ritchings,* 9 Abb. [N. S.] 359; see note to *Cherry* v. *Sprague,* 67 L. R. A. 51; *Whitford* v. *Panama R. R. Co.,* 23 N. Y. 468; *Wright* v. *Delafield,* 23 Barb. 498; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424; *Kerr* v. *Dougherty,* 79 N. Y. 342; *Congregational Unitarian*

*Society* v. *Hale*, 29 App. Div. 396 ; *Pratt* v. *Roman Catholic Orphan Asylum*. 20 App. Div. 354 ; *Robb* v. *Washington & Jef. Col.*, 103 App. Div. 356 ; *Tilden* v. *Green*, 130 N. Y. 29.) There was abundant evidence before the trial court justifying a finding that under the laws of Utah and Idaho this gift, really of real property at some point within their borders, could not and would not be upheld or enforced. (*Hawkins* v. *M. R. C. Co.*, 173 N. Y. 236 ; *Levy* v. *Levy*, 33 N. Y. 106 ; *Bascom* v. *Albertson*, 34 N. Y. 593 ; *Phelps* v. *Pond*, 23 N. Y. 77 ; *Murray* v. *Miller*, 178 N. Y. 316 ; *Tilden* v. *Green*, 130 N. Y. 45 ; *Holland* v. *Alcock*, 108 N. Y. 323 ; *Mormon Church* v. *U. S.*, 136 U. S. 1 ; *Hope* v. *Brewer*, 136 N. Y. 138 ; *Smith* v. *Chesebrough*, 176 N. Y. 317.)

*Charles S. Martin* for Susan Mount et al., respondents.

*J. Sheldon Frost*, *Russell S. Johnson* and *George M. Fannin* for Attorney-General.

CULLEN, Ch. J. The action was brought for the construction of the will of Maria B. Mount, a resident of this state, who died October 3rd, 1899. By her will, which bore date December 22nd, 1880, the testatrix provided: " As a thank-offering to Almighty God for all his benefits to me, I give, devise and bequeath unto the Reverend Daniel S. Tuttle, Bishop of Utah, the Protestant Episcopal Missionary Bishop of Utah and Idaho, in his corporate capacity, and to his successor or successors in office, the sum of Twenty Thousand 00/100 Dollars, In Trust, nevertheless, to erect therewith, at such place within the limits of his Episcopal Jurisdiction, as he, his successor or successors, shall select, a Protestant Episcopal Church building to God's glory, and the further sum of Five Thousand 00/000 Dollars, In Trust, nevertheless, to erect therewith in the same place, a rectory for the rector or clergyman in charge of said church, to be the property of the aforesaid Protestant Episcopal jurisdiction." Between the time of the execution of the will and the decease of the testatrix, Bishop Tuttle was transferred to the diocese of Missouri,

and the territory comprised within the missionary district was apportioned between three new dioceses ; Utah was assigned to the " Bishop of Salt Lake," the incumbent, at the time of this action being Bishop Leonard, who was originally made a defendant herein ; the southern portion of Idaho to the bishop of Boise, the present incumbent being the defendant appellant Bishop Funsten, and the northern portion of Idaho to the bishop of Spokane, the present incumbent being the defendant appellant Bishop Wells.   The bishop of Salt Lake died during the pendency of this action, and thereupon, under the constitution of the Protestant Episcopal church in this country, Bishop Tuttle as senior bishop of the church became *ad interim* bishop of Salt Lake, and was substituted as a defendant in place of his predecessor.   At the time of the testatrix's death there was no such corporation as the Protestant Episcopal jurisdiction or church of Utah and Idaho, nor has any such corporation since been created.   The trial court found as matters of fact that said gifts were void and invalid under the laws of Utah and of Idaho, and awarded the fund to the next of kin of the testatrix.   This judgment was affirmed by the Appellate Division by a divided court.

We shall not enter upon a consideration of how far the changes in the diocese of Utah and Idaho prior to the testatrix's decease affected the validity of her testamentary disposition.   Those changes doubtless create some embarrassment, but we are not prepared to say the difficulty would be insuperable if we did not feel constrained to hold the gift bad on other grounds.   The principal discussion in the learned Appellate Division seems to have turned on the question how far our recent statute regulating gifts for charitable purposes (Laws 1893, chap. 701) has extra-territorial effect.   We will assume that were the gift to be administered within this state its validity would be upheld under the statute cited.   (*Allen v. Stevens*, 161 N. Y. 122.)   The majority of the Appellate Division held that the validity of the trust or gift was to be determined by the laws of Utah and Idaho, not by those of this state.   The learned judge who wrote for the minority of

the court was of opinion that as the trust was valid under the laws of this state the trustees could be compelled to designate beneficiaries, who, being then made certain instead of, as before, indefinite, could secure an enforcement of the trust in the courts of any state, and thus the administration of the trust be independent of the laws of that state. The learned judge, referring to the statement made by Judge ALLEN in *Chamberlain* v. *Chamberlain* (43 N. Y. 424) that "a gift by will of a citizen of this state to a charity, or upon a trust to be administered in a sister state which would be lawful in this state, the domicile of the donor, would not be sustained, if it was not in accordance with the laws of the state in which the fund was to be administered," said that he knew of no case in which that dictum had been enforced and a legacy on a trust valid in this state declared invalid because it could not be enforced in the state in which the fund was to be administered. It may be that there is no case which decides the exact proposition. We are of opinion that the validity of a gift or trust under such circumstances depends on the extent to which it is necessary that the administration should be had in the foreign jurisdiction. For example, we do not at present see why a legacy given by a citizen of this state, even to a foreign trustee in trust to distribute the principal or the annual income among poor clergymen in a foreign state, could not be upheld, though such a trust was invalid by the laws of that state. The laws of a state on the subject of trusts are intended to regulate the tenure of property therein. (*Hope* v. *Brewer*, 136 N. Y. 138.) We imagine that in no jurisdiction are human beings of age and of sound mind incompetent to receive money or personal property. Therefore, in the case suggested there would seem no difficulty, despite the non-residence of the trustee, in retaining the fund here where the tenure would be legal and in remitting the money as it might become payable to the foreign beneficiaries. Where, however, as in this case, the object of the trust is the acquisition of lands in another state, it is plain that the execution of the trust must depend entirely on the validity under the

laws of that state of the trust under which the land is to be there held or on the competency to take of the donee upon whom the title is to be conferred.   The tenure of lands within any state depends solely on the laws of that state and cannot be affected by the statutes of any other state.   In the present case the trial court has found, and that finding has been affirmed by the Appellate Division, that under the laws of Utah and Idaho the trust created by the will is illegal and that the Protestant Episcopal church of those states is not a competent grantee.   As long as that finding stands the judgments below cannot be successfully attacked.   But the learned counsel for the appellants insists that the finding is without evidence or authority for its support, and to a consideration of that question we are now brought.

It is urged that the so-called common-law doctrine of charitable trusts prevails in Utah and Idaho.   The evidence as to the state of the law in Utah consists of a statute adopting the common law and of several decisions made by the Supreme Court of that state relating to the funds and property of the Mormon church, which was dissolved by an act of Congress. Those decisions seem to establish that to some extent, at least, the law of charitable trusts prevails in that state.   As to the law of Idaho the only evidence is a statute adopting the common law.   It is contended, however, that at common law the doctrine of charitable trusts did obtain and it is said that what the state of Idaho adopted was the common law of England, not that of the state of New York.   The last statement is entirely true; but in the absence of evidence that the courts of Idaho have taken a contrary view we must assume that our construction of the common law of England (there is but one common law) is correct and that it is accepted in that state as well as in this.   (*Monroe* v. *Douglass*, 5 N. Y. 447; *Chapin* v. *Dobson*, 78 N. Y. 74.)   At this point it is necessary to determine what is the trust on which the fund was bequeathed.   It was held in the minority opinion below and it is contended on this appeal by the learned counsel for the appellants that the trust is to select the site, construct thereon the church and

rectory, and hold the property in trust for the Protestant Episcopal church of Idaho and Utah. That such a trust was invalid in this state until the enactment of the statute of 1893 was settled by *Levy* v. *Levy* (33 N. Y. 97) and *Holland* v. *Alcock* (108 N. Y. 312), to which decisions our courts have firmly adhered. It is by no means certain, however, on which of two grounds the decisions have proceeded, that the law of charitable uses was not part of the common law, or that the law of charitable uses, though part of the common law, was abrogated by the repealing act of 1788 (Ch. 116, § 132) and by the provisions of the Revised Statutes regulating trusts. If the first was the ground of the decisions, we must assume that the trusts are illegal under the laws of Idaho ; if the second is the ground, we must assume the trusts to be valid in that state. The question is an interesting one, but we do not feel called upon to decide it, as we think the trust was not of the character claimed. Under the will the duty of the trustee is confined to the selection of a site and the erection thereon of a church and rectory and the application of the fund for such purpose. There is no direction that the lands and buildings shall be subsequently held in trust by the trustee named or other person ; on the contrary, they are " to be the property of the aforesaid Protestant Episcopal Church." Had there been a corporation of that character competent to take, unquestionably the trust would have been fully executed and discharged when the site was selected and the buildings erected. The title would necessarily be taken in the name of the church. In other words, the trust is solely to convert moneys into real estate and convey that real estate to a specified grantee. If the grantee had been competent to take, it would be immaterial whether the trust on which the fund was given was valid under the laws of Utah and Idaho or not, because the fund would not become subject to the jurisdiction of those states until it was converted into land, at which point the trust would cease. The difficulty, however, is that the Protestant Episcopal church of Utah and Idaho was at most only a volun-

tary unincorporated association and, therefore, incompetent to take or to hold the property. This was so held in *Owens* v. *Missionary Society* (14 N. Y. 380). The authority of that case has never been questioned. It must be borne in mind that the decision was made at a time when the law of charitable trusts was supposed to prevail, at least to some extent in this state. The case of *Williams* v. *Williams* (8 N. Y. 525), decided three years earlier, had declared that the law of charitable uses, as it existed in England at the time of the Revolution, was the law of this state. Yet the *Owens* case, while not impugning the doctrine of the *Williams* case, held that a devise made directly to an unincorporated voluntary association was void even under the doctrine of charitable uses. The case is cited with approval as late as *Murray* v. *Miller* (178 N. Y. 316). We are aware that in some states a contrary doctrine prevails, and it is held that a gift to a voluntary charitable or religious society is a gift in trust for the uses and purposes of such society. There is nothing, however, to show that that doctrine prevails either in Utah or in Idaho. Therefore, the finding of the trial court as to the invalidity of the trust and the incapacity of the grantee to take is not without evidence or presumption to sustain it.

It is urged by the appellants that the difficulty created by the incapacity of the Protestant Episcopal church of Utah and Idaho to hold the title to the church and rectory property can be obviated by directing the trustees, after their selection of the site, to organize a corporation in the state in which the site may be located and convey the property to the corporation. The laws of both states grant sufficient authority for the incorporation of such corporations. But the objection to this scheme is that it does not comply with the will of the testatrix. She did not direct that the church and rectory should be the property of such a religious association as her trustees might incorporate, but of the Protestant Episcopal church of those two states. It is entirely probable that had she foreseen the difficulty encountered in carrying out the

provisions of her will, she would have made a different dispo-
sition and possibly the one now suggested.   The statute of
1893, however, does not empower the courts to modify or
alter the directions of a testator, but merely validates testa-
mentary directions which before its enactment would have
been void, and empowers the courts to enforce the execution
of those directions.   The amendment to the statute, made in
1901, was enacted after the death of the testatrix, and has no
application to this case.   Moreover, the authority granted to
the courts, when literal compliance with the terms of a gift
to charity becomes impracticable or impossible, to administer
the gift in such manner as will most effectually accomplish
the will of the donor, can be exercised only after the lapse of
twenty-five years from the time of the gift.

The judgment appealed from should be affirmed, with costs
to all parties, payable out of the fund.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER,
JJ., concur.

Judgment affirmed.    _____