(118 App. Div. 742)

## CATT v. CATT et al.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

CHARITIES—CAPACITY OF BENEFICIARIES—EDUCATIONAL INSTITUTIONS.

 Code Iowa, § 2903, provides, in relation to perpetuities and gifts, that a devise or bequest of property may be made to the state, to be held in trust for and applied to a specified purpose, within the scope of its authority, but that the same shall not become effectual to pass title unless accepted by the executive council in behalf of the state. Laws 1893, p. 1748, c. 701, provides that no bequest or devise to an educational or charitable use, which shall in other respects be valid under the laws of the state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries therein, and provides that, if no person be named as trustee, the title shall vest in the Supreme Court. Testator's will gave property, consisting in part of real estate, situated in New York, to his wife for life, with the provision that on her death it should go to the Iowa State College of Agriculture and Mechanic Arts, to be used to found scholarships, and provided that the treasurer of such institution · should be custodian of the fund. The institution in question was one conducted by the state of Iowa, without any legal entity. *Held*, that the trust provision was invalid, as the institution itself could not take, and, even assuming that testator intended to make a gift to the state of Iowa, there could be no retroactive acceptance, under Code Iowa, § 2903, and Laws 1893, p. 1748, c. 701, was not applicable, as the statute could not have been intended to provide for such a trust for the benefit of an institution of another state.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, §§ 17, 68-77.]

Action by Carrie C. Catt against Mary Catt and others. Submitted on an agreed statement of facts. Judgment in favor of plaintiff, declaring invalid the trust provisions of the will of George W. Catt, de-

ceased, in so far as they related to the Iowa State College of Agriculture and Mechanic Arts.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Horace E. Parker, for plaintiff.

C. W. Mullan, for defendants.

LAMBERT, J.    George W. Catt died on the 8th of October, 1905, leaving a last will and testament, bearing date January 19, 1897, and a codicil bearing date September 20, 1905.    This latter affects merely the details of the disposition of certain property, and need not be considered here.    The testator devised certain real estate in Iowa to his mother and sister, made provision for disposing of his engineering and economic libraries, and provided in the fourth paragraph as follows:

"Fourth. I give to my wife Carrie one-half of all my remaining property, both real and personal, absolutely, and do hereby give to her all of the income from the other one-half during her life, and do constitute her a trustee of the said last half of my remaining property to keep and to hold the same during her life.  At her death this last one-half of my remaining property shall then go to the Iowa State College of Agriculture and Mechanic Arts, to be used to found as many scholarships of one hundred ($100.00) dollars as the income of the same shall provide."

He then provides that the fund shall be known as the "Geo. W. Catt Scholarship Fund," and that the "scholarships shall be given to the most needy students in the sophomore year, provided the student ranks above the average rank of the class as a freshman in both scholarship and deportment; and these scholarships are to be continued through the remaining two years of the course, if so voted by the board of award." He provides that the treasurer of the college shall be the custodian of the fund, and outlines a board of award, the details of which are not important here.    While the testator refers to his wife as a trustee of this remaining one-half of this estate, it is clear that the only effect of this provision of the will is to give her a life estate in the property, becoming, by virtue of her possession of the same, and the ownership of the income, a trustee for the remaindermen; in other words, she is a life tenant, with the duty of preserving the corpus of the estate for the benefit of those who are entitled to it at her death.

The question to be determined is whether the Iowa State College of Agriculture and Mechanic Arts or the heirs of the testator constitute the remaindermen.    It is conceded that the Iowa State College of Agriculture and Mechanic Arts is not a corporation having the authority under its charter to take by devise or bequest.    It is not a corporation of any character.    It is not even a voluntary association of individuals for the purpose of carrying on an educational work.    It is merely an institution conducted by the state itself, without any legal entity.    If it were an unincorporated association, the authorities are uniform in this state that it could not take and hold property by deed or will.    Mount v. Tuttle, 183 N. Y. 358, 367, 76 N. E. 873, 2 L. R. A. (N. S.) 428, and authority there cited.    But it is urged that the testator was a graduate of the said college, that he knew that it was a state institution, and that, gathering his intent, this may be construed as a gift to the state of Iowa

for the purposes pointed out in the will. The rule of construction, which calls upon the courts to give effect to the intent of the testator, requires that the intent should be found in the language and purpose of the will itself. We look in vain in the will for anything to indicate that the testator was a pupil of the institution, or that he had any other knowledge of its relation to the state than such as might be implied from the fact that it is known as the Iowa State College of Agriculture and Mechanic Arts, which might be the case if it was in fact a private or quasi public corporation. There is nothing in the language used by the testator which indicates any other intention than a gift to this college. This is evident from the fact that he provides that the fund shall be in the custody of the treasurer of the college, and all of the provisions in reference to the board of award relate to the classes, the faculty, and the president of the college; giving no intimation that any one other than the college, and those related to it in its capacity as a college, are to have anything to do with the property. There is in the scheme of the testator a clearly expressed purpose of making a gift to the college, not for its present benefit, but for the purpose of holding the fund in trust to support scholarships, to be awarded to a class of students who may desire to avail themselves of the same in the future. It was held in Johnson v. Mayne, 4 Clarke (Iowa,) 180, that a gift to an unincorporated church society might be sustained in so far as it provided for an immediate gift for the erection of a church, but as to that portion which required the society to act as a trustee of a fund, and to pay expenses of a missionary, etc., the church had no power to act; so that, in so far as the question here involved is concerned, the law of Iowa is in harmony with our own.

Unless it can be spelled out that the testator intended to make a gift to the state of Iowa, there is no possible ground on which the will in this particular may be sustained. As we have already pointed out, such an intention is negatived by the language of the will. While the facts and circumstances surrounding the making of the will may be shown for the purpose of construing the language used, we know of no rule which would permit of showing the history of the testator for the purpose of establishing that specific language, designating a trustee, was intended to mean something entirely different.

But if it be assumed that the testator intended to make a gift to the state of Iowa, is that state qualified to take and hold real estate in the state of New York for the purpose expressed in this will? There is no provision for converting the real estate into personalty, and it must be assumed that this will, relating to both real and personal property, has to do with some real estate in this jurisdiction. While the American and English Encyclopedia of Law (2d Ed., vol. 28, p. 954) lays down the proposition that each one of the states may be trustees, and take and hold trust property and execute the same, and cites authorities, we do not find among the cases cited any substantial support for this doctrine. From the fact that, in the absence of a special statutory authority, the state may not be sued to compel an execution of the trust, the weight of reason would seem to be against the proposition, and this view has been taken by the courts of this state. In the case of Levy v. Levy, 33 N. Y. 97, the testator had devised property primarily "to the people

of the United States," to establish and maintain perpetually a school for the education of persons undefined, except as a class; and, secondarily, "to the people of the state of Virginia" for the same purpose. The court say:

"Now, conceding that the testator intended as the trustee of the charity the United States as a political body, has it, as such, capacity to take and act? We are not advanced a single step towards a solution of the point of a concession that the United States government may take directly by gift, grant, devise, property for governmental use or benefit. If it takes under the devise and bequest of the testator, it must be upon the trust and for the special charity, viz., to found and perpetually conduct a school for agricultural instruction of a certain class of children in the state of Virginia. Is it, therefore, within the scope of its political corporate capacity to administer indefinite charitable trusts? It seems to me there can be but one answer. The United States exists under grants of power, express or implied, in a written constitution, and the functions of all the departments are definitely limited and arranged. It is not within the express or implied powers of the government, as organized, to administer a charity. * * * So, also, with regard to the state of Virginia, however comprehensive the state sovereignty, its officers are regulated in their duties by a written constitution, which does not contemplate special trust functions. Simply as a political corporation, neither government has a capacity to take or act. If, then, the devises and bequests were intended to be made to the United States and to the state of Virginia as political bodies, I think they are void, because neither the United States nor the state is capable of taking as trustee for the management of the special charity."

There was a division of the court upon some of the questions involved in the case cited, but in the Matter of the Will of Fox, 52 N. Y. 530–533, 11 Am. Rep. 751, Andrews, J., writing the opinion of the court, says:

"It was held by this court in Levy v. Levy, 33 N. Y. 99, that it [the United States] had no power to take lands by devise in trust for a charity"

—and it was equally decided that the state of Virginia was without such power.

If it were necessary to decide the point, it seems clear that the weight of authority is against the power of a state, simply because it is a state, to take property for the purposes of a charitable trust. It may be that, under the provisions of section 2903 of the Code of Iowa, a devise or bequest might vest the title in that state, provided the same were accepted; but it is here conceded that the state has not accepted the provisions of this will through its executive council, as provided by the laws of that state. This could not be accomplished by the official action of the state at this time, or at any time after the will became operative, for the obvious reason that such action could not have retroactive force. The will became operative upon the death of the testator. If the property under its provisions did not then vest in the college or the state, it passed to the heirs at law and next of kin of the testator, and could not be devested by any act of the Legislature of the state of Iowa.

It being established beyond controversy that an unincorporated association cannot take and hold property for the purposes of administering a charitable trust, even in the state of Iowa, it follows that the gift is equally open to objection if the devise be construed to the treasurer of the college, which has no legal entity. It was held in Murray v. Miller, 85 App. Div. 414, 83 N. Y. Supp. 591, affirmed 178 N. Y. 316,

70 N. E. 870, that a devise of real estate to the treasurer of an unincorporated religious association for its benefit was void. The beneficiaries under the original will in this case are the prospective students of the college. By the codicil this is modified, and the college itself is made the beneficiary as to a portion of the fund. The college having no legal existence, in the sense of being answerable to the beneficiaries through the intervention of the courts, its treasurer, as such, can have no powers higher than his official source; and the reason of the rule which excludes an unincorporated association applies equally to its treasurer or other nominal officers.

It only remains to determine whether the college can gain any rights under the provisions of chapter 701, p. 1748, of the Laws of 1893. This is entitled "An act to regulate gifts for charitable purposes," and provides:

"No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall, in other respects, be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest, or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such lands or property shall vest in the Supreme Court."

Section 2 provides that the Supreme Court shall have control over such gifts, and that the "attorney general shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trusts by proper proceedings in the court."

The legislation of this state can have no extraterritorial operation, nor has this court any jurisdiction or any tangible existence outside of the geographical limitations of the state, and the Legislature could not have intended that it should be called upon to accept title to real and personal property for the purpose of administering a trust apart from its judicial functions. As the trustee of a trust to be administered in the state of Iowa, the court could have no existence, either to exercise its own legitimate functions as a court, or to answer to the requirements of the courts of the state where the beneficiaries of the trust are domiciled. The Supreme Court of this state, as a trustee in the state of Iowa, would be open to exactly the same objections which exist to any other unincorporated association; it would have no legal existence there. The obvious intention of the Legislature was not to provide for trusts of the character here attempted to be created for the benefit of the institutions of another state, but to foster permanent trusts for religious, educational, charitable, and benevolent purposes within our own state; and this view finds support in Allen v. Stevens, 161 N. Y. 122, 141, 55 N. E. 568, where Parker, C. J., after reviewing the conflicting decisions respecting charitable uses, sets forth the statute and says:

"Reading the statute in the light of the events to which reference has been made, it seems to me very clear that the Legislature intended to restore the law of charitable trusts as declared in the Williams Case; that having discovered that legislative enactment had operated to take away the powers of the courts of equity to administer trusts that were indefinite as to beneficiaries, and had declared a permanent charity void unless the devise in trust was

to a corporation already formed or one to be created, it sought to restore that which had been taken away through another enactment."

That is what is intended by this statute—nothing more and nothing less than to restore to courts of equity the power to administer trusts that were indefinite as to beneficiaries—as the law had been declared in Williams v. Williams, 8 N. Y. 525. It did not undertake to validate trusts which attempted to vest property in unincorporated associations or other legal nonentities, but simply to restore to the courts the power within this state to administer charitable trusts, which power had been taken from them by statute. In the will and codicil now before this court the testator has attempted to make the Iowa State College of Agriculture and Mechanic Arts a legal nonentity—not only a beneficiary, but a trustee for itself as such beneficiary. A trust of this character is condemned alike by the courts of this state and those of the state of Iowa, and the statute of 1893, here under consideration, does not operate to validate the provisions of the will under which the Iowa institution is claiming a benefit.

The plaintiff should have judgment declaring invalid the trust provisions of the will in so far as they relate to the Iowa State College of Agriculture and Mechanic Arts.

LAUGHLIN, J., concurs.

PATTERSON, P. J. I concur with my associates in the conclusion that judgment upon the submission of the controversy in this case must be directed for the plaintiff. Apart from the considerations which have induced other members of the court to reach that conclusion, I am of the opinion that the provisions of chapter 701, p. 1748, of the Laws of 1893, are not applicable to the gift made in the will now under consideration to or for the benefit of the Iowa State College of Agriculture and Mechanic Arts. There is no gift in trust for that college, except in the general sense in which every gift for charity necessarily involves the idea of a trust relationship. But there is no trustee appointed in this will, and the gift to the college is direct. Considering the fourth clause or section of the will only, the gift of the one-half of the estate upon the death of the testator's widow to the college is in my opinion a direct gift. Matter of Griffin, 167 N. Y. 71, 60 N. E. 284; Bird v. Merklee, 144 N. Y. 544, 39 N. E. 645, 27 L. R. A. 423; Wetmore v. Parker, 52 N. Y. 450. But when we come to consider the provisions of the codicil to the will, the intention of the testator to make a direct gift to the college becomes fully apparent; and, while those provisions may for other reasons be invalid, nevertheless they may be resorted to for the purpose of ascertaining the intention of the testator. Van Kleeck v. Dutch Church, 20 Wend. 457; Tilden v. Green, 130 N. Y. 55, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Kiah v. Grenier, 56 N. Y. 220; Marks v. Halligan, 61 App. Div. 179, 70 N. Y. Supp. 444; Van Nestrand v. Moore, 52 N. Y. 21. We have, therefore, in the present case a gift to a legatee or devisee incapable of taking, under the rule in Owens v. Missionary Society, 14 N. Y. 380, 67 Am. Dec. 160, unless that rule is displaced by the provisions of the so-called "Tilden Act," contained in the statute of 1893 above cited. However, in Mount v. Tuttle, 183 N. Y. 367, 78 N. E.

873, 2 L. R. A. (N. S.) 428, the Court of Appeals has declared that the rule in the Owens Case is still in force. As I view it, the act of 1893 was not intended to confer upon an institution or body or association, otherwise incapable of receiving a testamentary gift, the power to take by direct bequest or devise, and where it indisputably appears, as here, that it was the intention of the testator that the gift should go to a particular, distinct, nominated party, the act of 1893 does not empower the courts (to use the language of the Court of Appeals in Mount v. Tuttle) "to modify or alter the directions of a testator, but merely validates testamentary directions which before its enactment would have been void, and empowers the courts to enforce the execution of those directions." The act of 1893 in its first section relates only to validating a gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses, which in other respects would be valid by the laws of the state, where there is indefiniteness or uncertainty of the persons designated as the beneficiaries, or where in the instrument creating such gift, grant, etc., no person is named as trustee, in which latter event the title to the lands or property vests in the Supreme Court. The second section, as amended by chapter 291, p. 751, of the Laws of 1901, gives to the Supreme Court control over gifts, grants, bequests, and devises in all cases provided for by section 1 of the act, and, whenever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant, bequest, or device, etc., as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court shall direct, make an order directing that such gift, bequest, etc., shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purposes of the instrument. Referring back to section 1 of the act of 1893, it is plain that the act is intended to apply only to gifts, grants, bequests, or devises of the character therein named, which shall in other respects be valid under the laws of this state, and the gift, bequest, or devise to an unincorporated institution is not valid under the laws of this state, if the Owens Case still controls, as it is said to control in Mount v. Tuttle, supra.

I find nothing in the act of 1893 or in the amendment of 1901 which gives power to an unincorporated association to take or hold such a gift as that intended by the testator in this case, either absolutely or as trustee. I am therefore of the opinion that, this being a direct gift, demonstrably intended as such, the Iowa State College of Agriculture and Mechanic Arts cannot take.

LAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. (concurring). I agree that neither the Iowa State College of Agriculture and Mechanic Arts nor the state of Iowa can take. Except for the codicil, however, I would be inclined to the opinion that the will itself, under the law of this state as it now exists, by virtue of chapter 701, p. 1748, of the Laws of 1893, as amended by chapter 291, p. 751, of the Laws of 1901, could be sustained as a bequest for

an educational use to found scholarships for needy and deserving students of the Iowa State College of Agriculture and Mechanic Arts, to be selected in a prescribed manner.   To uphold the bequest it is true the college itself must be eliminated, and the object of founding scholarships alone given effect.   Such a construction, it seems to me, from the reading of the will itself is justified.   The act of 1893, as construed by Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, and kindred cases, clearly revives the law of charitable uses.   Under the doctrine of charitable uses, as well as by the statute, the naming of a trustee is not a necessity. So, too, under that doctrine, the giving of property for a charitable purpose creates a trust.   In Moore's Heirs v. Moore's Devisees, 4 Dana (Ky.) 354, 29 Am. Dec. 417, the rule is summarized as follows:

"Where a person by will gives property and points out the object, the property, and the way in which it shall go, a trust is created.   *   *   *   When such a trust is created, a court of equity will support and enforce it, even if the donor had appointed no trustee and had let the legal title go to his heirs; for it is well settled that where there is a beneficial trust a court of equity will act as trustee, or appoint one, if necessary, for perpetuating the objects of the grantor."

In Hornbeck's Executor v. American Bible Society, 2 Sandf. Ch. 133, it was held that bequests for charitable purposes even to unincorporated societies can be sustained where the object is competent, and is designated or may be clearly ascertained.   The will, therefore, although it named no trustee, which was not a necessity, provides for a charitable bequest, which by virtue of its character must be deemed a trust for a certain object, to wit, scholarships for worthy and deserving students of the college.   The statute provides that the gift shall not fail for indefiniteness of the beneficiary.   If the bequest be in trust, as it would seem it must be deemed to be, the beneficiaries are not fatally indefinite, nor as indefinite as in many of the cases, which I have been at some pains to collect, in all of which the provisions of the will were held to be valid, and which are as follows:   "Education of the children of the poor" (Williams v. Williams, 8 N. Y. 525) ; "founding of a scholarship for the preparation for the ministry of one of the testator's kindred, to be selected" (Andrews v. General Theological Seminary, 8 N. Y. 559, note); "for the advancement of the Christian religion amongst infidels in North America" (Attorney General v. City of London, 3 Bro. C. C. 171); "for poor clergymen" (Moggridge v. Thackwell, Id. 517); "poor inhabitants of St. Leonard" (Attorney General v. Clarke, Amb. 422); "poor dissenting ministers living in any county " (Waller v. Childs, Id. 524); "the creation of public sentiment to put an end to negro slavery" (Jackson v. Phillips, 14 Allen [Mass.] 539); "to the cause of Christ and for the benefit and promotion of true evangelical piety and religion" (Going v. Emery, 16 Pick. [Mass.] 107, 26 Am. Dec. 645); "for the promotion of such religious and charitable enterprises as shall be designated by a majority of the pastors composing the Middlesex Union Association" (Brown v. Kelsey, 2 Cush. [Mass.] 243); educating poor orphans of a county, to be selected by the county court" (Moore's Heirs v. Moore's Devisees, supra); and "to buy bread for the poor of a church, and help in the education of young students" (Witman v. Lex, 17 Serg. & R. [Pa.] 88, 17 Am. Dec. 644.   The Massachusetts court in Jackson v. Phillips, supra, went even further, and applied the cy-pres

doctrine, and distributed the bequest as near to the object of the testator as the court was able to determine; the conferring of which power upon the Supreme Court would seem to be the effect of the amendment of 1901 to the statute of 1893.

That the Court of Appeals recognizes the doctrine of the above cases as revived by the law of 1893 is illustrated by the remarks of Cullen, C. J., in Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873, 2 L. R. A. (N. S.) 428, which are as follows:

"For example, we do not at present see why a legacy given by a citizen of this state, even to a foreign trustee, in trust to distribute the principal or the annual income among poor clergymen in a foreign state, could not be upheld."

. If the foregoing observations be correct, the only question that would remain respecting the will itself would be whether, the beneficiaries being foreign to this state, our Supreme Court would administer the trust for their benefit. There are remarks in Chamberlain v. Chamberlain, 43 N. Y. 424, which would indicate that it would not do so. The observation in the opinion in that case is as follows:

"The courts of this state will not administer a foreign charity, but they will direct money devoted to it to be paid over to the proper parties, leaving it to the courts of the state within which the charity is to be established to provide for its due administration and for the proper application of the legacy."

As authority for the proposition thus enunciated, Hill on Trustees, 468, 2 Story on Equity Jurisprudence, § 430, Burbank.v. Whitney, 24 Pick. (Mass.) 154, 35 Am. Dec. 312, Provost of Edinburgh v. Aubrey, Ambler, 236, and Attorney General v. Lepine, 2 Swanst. 181, are cited. It would seem, notwithstanding the broadness of the proposition quoted, that it has no application to the administration of a valid trust in this state, even though the object be a foreign beneficiary. Reference to the authorities cited for the proposition shows that Mr. Hill, when he laid it down, was treating of the formation of schemes for carrying out a charitable bequest in foreign territory. His precise language is as follows:

"And where the trust is for a foreign charity, the court has no jurisdiction to direct a scheme, but will order the fund to be paid over to the trustees."

In Provost of Edinburgh v. Aubrey, supra, and in Attorney General v. Lepine, supra, there were bequests for the establishment of charities in Scotland, resting upon the discretion of persons named. The court simply decided that it would not formulate a scheme for carrying out the bequest in either case, but would transmit the money to the individuals in Scotland, so that they themselves might carry out the purposes of the testator. In Burbank v. Whitney, supra, specific sums were given to a bible and missionary society, both of which were unincorporated and located in the state of New York. The court held that it was merely the duty of the executor to pay over the moneys to such societies, and let them expend it as they saw fit. In Story's Equity Jurisprudence (vol. 2, 13th Ed. p. 517), the rule is stated as follows:

"It has been made a question whether a court of equity sitting in one jurisdiction can execute any charitable bequest for foreign objects in another jurisdiction. The established doctrine seems to be in favor of executing such be-

quests. Of course, this must be understood as subject to the implied exception that the objects of the charities are not against the public policy or laws of the state where they are sought to be enforced or put into execution; for no state is under any obligation to give effect to any acts of parties which contravene its own policy or laws."

In another portion of the opinion in Chamberlain v. Chamberlain, supra, it is said:

"Bequests in aid of foreign charities, valid and legal in the place of their existence, will be supported by the courts of the state in which the bequests are made."

This latter case is very extensively quoted in Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458. The point at issue in both of these cases was whether the courts of this state would, upon the doctrines of comity, permit a foreign state to take a bequest made here, invalid by the laws of this state, although valid by the law of the state to which it was to be transmitted, and both decisions were to the effect that it was no concern of this state whether its statute laws were violated with respect to perpetuity or capacity to take, if the law of the state of domicile of the legatee did not forbid. This is the extent of the doctrine as recently reiterated in Robb v. Washington & Jefferson College, 185 N. Y. 485, 78 N. E. 359.

If the bequest under the will is valid, it would be strange indeed that the courts of this state should permit the bequest to fail because the beneficiary chanced to be domiciled in a foreign state. The testator was a resident of this state, and if he succeeded in making a will in conformity with its laws, his wishes should be respected and his desires carried out. Nor is there any practical difficulty in so doing. The court can appoint a trustee, at least, to aid it in carrying out the provisions of the will, and the income can be transmitted to the treasurer of the Iowa College of Agriculture and Mechanic Arts, who can pay it over for the benefit of such students as the board designated by the testator shall select. It can be very easily determined whether the selection is properly made and the money properly applied. All that is necessary to be done is that the money shall be properly invested and the income transmitted, and a report of its application made, with proper vouchers in support of the same. As much certainty can thus be had as would be the case had the testator appointed some resident trust company his trustee for that purpose.

If there had been no codicil, therefore, I cannot see that the will would have been invalid, or that the courts of this state would have refused to carry it into effect. The only difficulty which I labor under is that the codicil although invalid shows such a clear intent on the part of the testator, which reflects upon his will, to give his property directly and absolutely to the Iowa State College of Agriculture and Mechanic Arts, as to cast doubt upon his purpose to found scholarships for deserving students only. The college cannot take, and if the testator's intent was that it should take, the will must fail.

From this consideration only, I am constrained to concur in the decision that the will is invalid.